**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x

ANA MARTINEZ REYES,
individually and on behalf of
all others similarly situated,

                                **Plaintiffs,**

           -against-

SUMMIT HEALTH MANAGEMENT, LLC,

                            **Defendant.**

------------------------------------------------------------ x

:    **Case No.:**

:    **CLASS ACTION COMPLAINT**

:    **JURY TRIAL DEMANDED**

1.       Plaintiff, Ana Martinez Reyes, by her attorneys, brings this action on behalf of herself and all others similarly situated, against Defendant, Summit Health Management, LLC, which owns and operates all CityMD urgent care offices ("CityMD") in New York and New Jersey.  Plaintiff alleges the following on information and belief except for the facts specifically alleged regarding Plaintiff:

## NATURE OF THE ACTION

2.       This is a putative class action arising out of deceptive conduct on the part of Summit Health Management, LLC ("Summit Health"), which owns and operates CityMD, which is a Summit Health Company.  In the New York metropolitan area, Summit Health owns and operates over 150 CityMD urgent care medical centers.  As explained in greater detail herein, Summit Health has improperly circumvented (or caused CityMD to improperly circumvent) the Family First Coronavirus Response Act and Cares Act, which were enacted to, among other things, provide for free COVID Tests to the public, and taken monetary advantage of consumers'

widespread knowledge and belief that, by virtue of these laws, they would receive free COVID tests.  Consistent with these laws and their import, when consumers – including Plaintiff and the members of the Class in this case – who had medical insurance went to a CityMD facility to get tested for COVID, CityMD did not require them to pay anything. But, contrary to the import of these laws, Summit Health submitted (or caused CityMD to submit) claims to consumers' insurance companies that did not identify the service as being for COVID testing (for which there are specific provisions and for which there have been CPT codes since April 2020). Rather, Summit Health (or CityMD at its behest) coded the visit as a general "Office Visit" (which is a different matter entirely and for which there are also different CPT codes).  Ignorant that their insureds actually had COVID tests, for which the insureds were not required to pay anything, the insured health insurance companies processed the claims as ordinary medical non-Covid related claims and when the insureds had co-pays and/or deductibles, it did not pay the full amount to Summit Health or CityMD, both of which, then, billed the consumers for all of the amounts not paid by the insurers.

3.     As a consequence of the scheme, notwithstanding that they should have had no financial responsibility for their COVID tests, Summit Health has aggressively been seeking to collect from Plaintiff and the Class the amount of the "Office Visit" charges their insurers did not pay.  Summit Health has harassed these consumers by sending repeated bills by mail, email, and text and by threatening to refer their bills to a collection agency. These efforts have led to Plaintiff and members of the Class improperly paying Summit Health out of their own pockets for their COVID tests.  Significantly, these efforts by Summit Health to intimidate Plaintiff and Class members into paying the deficiency did not commence until about May 2022, a year or

more after most Covid tests administered by Summit Health were administered. By virtue of this wrongful and deceptive scheme, Summit Health has knowingly or willfully violated New York General Business Law § 349 and been unjustly enriched.

4.      This action is accordingly brought to recover all amounts Plaintiff and the Class have paid to Summit Health for an "Office Visit" that was, in actuality, a COVID test, and to enjoin Summit Health from, and require it to cause CityMD to cease, any further efforts to collect from Plaintiff and the Class the portion of its $300 "Office Visit" their insurers did not pay.

## PARTIES

5.      Plaintiff Ana Martinez Reyes is a resident of New York County, New York. In August 2022, Plaintiff received several medical bills from Summit Health and CityMD, charging her for "Office Visits" for each COVID test she had taken at CityMD facilities in 2020 and 2021, for a total of five tests.  Plaintiff started receiving these bills in August 2022, over two years after her first test. Each bill shows a $0.00 charge for Plaintiff's Covid test, but an additional $300.00 charge labeled as a general "Office Visit."  Each bill also shows the amount of this $300 charge paid by Plaintiff's insurer and seeks to recover from Plaintiff a total of $550.13.  Plaintiff has paid $140.00 toward one of these bills.

6.      Defendant, Summit Health Management LLC, is a New Jersey corporation with its principal place of business located at 1 Diamond Hill Road, Berkeley Heights, New Jersey, 07922. Summit Health was formed by the merger of CityMD and Summit Medical Group, PA in 2019.  Pursuant to a corporate-wide rebranding in March 2021, CityMD, while continuing to

3

operate under the CityMD brand name has also been branded "A Summit Health Company."[1]
The "Office Visit" bills sent to Plaintiff and the Class indicate that they are sent by Summit
Health and "CityMD, A Summit Health Company":





7.      CityMD operates about 150 urgent care clinics in New York and New Jersey, of
which 135 are located in New York.

8.      Summit Health and CityMD operate in concert and together in a common
enterprise and through related activities so the actions of CityMD may be imputed to Summit
Health and/or that their corporate formality should be disregarded for purposes of attributing
their unlawful conduct to Summit Health.

9.      Further specifics of the intra-corporate nature of Summit Health's control and
operation of CityMD with respect to the allegations set forth herein consists of internal corporate
information and knowledge uniquely held by Summit Health that is beyond the knowledge of

---

[1] *See* https://www.summithealth.com/news/summit-medical-group-and-citymd-announce-new-brand-identity (visited October 25, 2022).

4

consumers situated such as Plaintiff herein and will appropriately be the subject of discovery herein.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332(d)(2) inasmuch as the Defendant is a citizen of the State of New Jersey and the members of the Class alleged herein include persons who are citizens of States other than New Jersey, including New York; the action is a putative class action pursuant to Federal Rule of Civil Procedure 23, and the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the events giving rise to the claims alleged herein occurred in New York.

## FACTUAL ALLEGATIONS

12.     In 2020, the entire world had to face a new, unknown, and fast spreading virus identified as COVID-19. Since the beginning of this worldwide pandemic, the best mitigation mechanism to identify and curtail the spread of the virus was COVID-19 diagnostic testing ("Covid Testing") through rapid, PCR and antibodies tests.  Such testing to identify carriers of the virus and then isolating carriers was believed to be essential to counteract the rapid spread of the virus in the United States.

13.     On March 11, 2020, the World Health Organization (WHO) issued a declaration that COVID-19 was a global pandemic. Two days later, the American Medical Association (AMA) announced the development of a specific code for laboratory testing for the coronavirus, code 87635 (AMA, 2020). The code was available for immediate use for

laboratories, hospitals, and health care systems. Revised codes were published on April 10, 2020, and were effective immediately.[2]

14.     Needing to urgently respond to the public health emergency posed by the COVID-19 pandemic, the Families First Coronavirus Response Act (the "FFCRA") and the Coronavirus Aid, Relief, Economic Security Act (the "CARES Act") were enacted on March 18, 2020, and March 27, 2020, respectively, to address, among other things, issues pertaining to the costs of and access to Covid Testing during the COVID-19 emergency.

15.     The Families First Coronavirus Response Act provides in Section § 6001:

*COVERAGE OF TESTING FOR COVID–19.*

(a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage (including a grandfathered health plan (as defined in section 1251(e) of the Patient Protection and Affordable Care Act)) shall provide coverage, and **shall not impose any cost sharing** (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, **for** the following items and services furnished during any portion of the emergency period defined in paragraph (1)(B) of section 1135(g) of the Social Security Act (42 U.S.C. 1320b–5(g)) beginning on or after the date of the enactment of this Act:

(1) **In vitro diagnostic products** (as defined in section 809.3(a) of title 21, Code of Federal Regulations) **for the detection of SARS–CoV–2 or**

---

[2] *See* https://yes-himconsulting.com/new-cpt-codes-for-covid-19-antibody-detection/ (last visited on November 14, 2022).

**the diagnosis of the virus that causes COVID–19** that are approved, cleared, or authorized under section 510(k), 513, 515 or 564 of the Federal Food, Drug, and Cosmetic Act, and the administration of such in vitro diagnostic products.

2) **Items and services furnished to an individual during health care provider office visits** (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits **that result in an order for or administration of an in vitro diagnostic product** described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product.

16.     The Coronavirus Aid, Relief, Economic Security Act followed the FFCRA and confirmed the relevant provisions of its predecessor concerning COVID testing costs. The CARES Act became generally known to the public as the federal law providing that tests for COVID-19 are covered without a copayment, coinsurance, or deductible when a healthcare provider determines that the testing is medically appropriate for the person, and that the testing is covered regardless of whether it is performed in-network or out-of-network.

17.     The Department of Labor (DOL), the Department of Health and Human Services (HHS), and the Department of the Treasury (collectively, "the Departments") have jointly prepared a list of Frequently Asked Questions ("FAQ") regarding the FCCRA and CARES Act, further emphasizing that no cost sharing shall be imposed on the consumer for a Covid Test:

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

**The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act** establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. **Therefore, the statute generally precludes balance billing for COVID-19 testing**. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[3]

18.     The CARES Act and the related FAQs, among other things, created a general and widespread public understanding that Covid Tests would be free of charge for everyone, regardless of insurance status.

---

[3] See FAQS ABOUT FAMILIES FIRST CORONAVIRUS RESPONSE ACT AND CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT IMPLEMENTATION PART 43, June 23, 2020, available at https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf (last visited November 2, 2022).

19.     Under this belief, people in the New York Metropolitan area lined up to get tested at one of the many CityMD urgent care clinics in New York and New Jersey.

20.     In November 2020, Summit Health CityMD CEO Dr. Jeffrey Le Benger publicly stated that people were lining up around the block of CityMD facilities and patiently waiting for their turn, and the company was conducting more than 15,000 Covid tests every day.[4] Le Benger also indicated at this time that "[t]hese lines are going to continue until a vaccine comes out and until the nice weather comes about."

21.     After potentially waiting for hours to be checked into a CityMD facility, persons seeking a Covid Test were asked if they had insurance and, if so, to provide their insurance information.  They were then relatively quickly ushered in for a Covid Test.  Persons taking a rapid test or PCR test did not wait at the CityMD facility for their results: rapid test results would be received via email within two hours, while PCR results would be posted in two to three days on the patient's "My Summit Health app account."[5] In either case, the process of being tested was generally no longer than 5 to 10 minutes.  Other than receiving their test results electronically, such persons received no further communications regarding their Summit Health CityMD Covid Test until about May 2022 when Summit Health started its campaign to bill them for Covid Tests that they previously believed to be free.

22.     On Sep 12, 2022, Gothamist published an article titled "CityMD unleashes wave of surprise bills for COVID-19 tests", shining a light on the deceptive practice of billing patients

---

[4] Will Feuer, "Long lines for Covid testing not going away anytime soon, Summit CityMD CEO says: 'We are being inundated" (November 27, 2020), available at https://www.cnbc.com/2020/11/27/long-lines-for-covid-testing-not-going-away-summit-citymd-ceo-says.html.
[5] See https://www.citymd.com/services/lab-tests-screenings/covid-19-testing (last visited November 14, 2022).

for "Office Visits" instead as Covid Tests years after they visited a CityMD facility for a

COVID-19 test.[6]

    23.    The Better Business Bureau received over 130 complaints by persons who

obtained a COVID test at CityMD about being billed for the COVID Test disguised as an

"Office Visit" sometimes over a year after having taken that test, and about not being informed

they would be charged $300 for an "Office Visit."[7]  These complaints, some of which are

reproduced below and show that Summit Health's deceptive and improper billing practices are

widespread:



**Initial Complaint**
10/17/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered

I have a bill that I'd like to dispute. It was for an Antigen Covid Test in October 2020 at a City MD in Manhattan The visit was billed in August 2022, two years later. I have tried calling City MD directly, but I do not have hours free of my day to wait on hold. I would recommend a hold system where the patient is put in a virtual queue, then called later when it is their turn. An expected wait time would be appreciated too. I already spoke to my insurance company and they told me to dispute the bill with City MD directly. I will get them to contact City MD as well. They gave me some helpful information regarding my plan policy that is included in my dispute below:My billing statement (attached) clearly documents a SARS ANTIGEN FIA test, but for $0 which is perplexing because I'm not sure how a test could cost nothing. Then it bills $300 for an office visit. I was not informed that it would be charged as a $300 office visit at the point of service. If City MD would like to charge $300, they should re-bill the entire visit as ONLY a Covid Test and my insurance company will happily pay for it. If the "Office Visit" charge is a standard and necessary procedure, please choose a description along the lines of ****************** Visit" so that my insurance can cover the entirety of it.This bill is a complete misrepresentation of what happened. I did not come in for an "Office Visit" with no reason but I came in for a Covid Test. City MD needs to fix this and inform me that I have been re-billed. It is a shame to take advantage of vulnerable patients during a global pandemic by mis-representing services on billing. It is also highly unprofessional to bill 2 years after the visit. To repeat: my insurance, as most insurances, are happy to cover Covid-related services that happened in 2020.

---

[6] Caroline Lewis, "CityMD unleashes wave of surprise bills for COVID-19 tests" (September 12, 2022), available online at https://gothamist.com/news/citymd-unleashes-wave-of-surprise-bills-for-covid-19-tests-in-nyc.

[7] See https://www.bbb.org/us/ny/uniondale/profile/urgent-care-clinic/citymd-0121-139599/complaints?page=6&status=unanswered&type= (last visited, November 14, 2022).

 **Initial Complaint**
10/07/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered ❓

On September 12, 2022, I was send a bill from CityMD for a COVID-19 test I had taken on September 7, 2021, over a year ago. I was extremely confused as to why I got this bill, when I was specifically told numerous times during my visit that my test would be 100% covered because of the CARES Act and policies in ***, regardless of whether or not I had insurance (and I did indeed have insurance). I was billed for $300 for a "Global UCC" for visiting the urgent care and $0 for the actual test. My insurance has covered $224.60, so I am being told to pay CityMD the remainder of $75.40. I believe CityMD intentionally billed me for "services" rather than for the actual test, because any charges for the test itself would have been covered by insurance and they would not be able to recoup additional costs. Given the status of the pandemic and legislation at the time, I do not believe CityMD should be attempting to bill me disingenuously in this manner. I think it's especially ludicrous that they sent me a bill over a year after my original visit. I have attempted to call CityMD numerous times at ***********, which is their line for billing disputes, but I have never managed to reach someone due to the absurdly long wait times. It seems CityMD is sending out a mass of these unnecessary bills to people to simply win money from people who don't know to dispute them. It seems CityMD has been bombarding people across *** in the exact same manner as me (see *********************************************************************************). I want CityMD to waive my bill, given I believe they constitute impermissible charges.

 **Initial Complaint**
10/20/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Unanswered ❓

My name is ***************************. On December 17, 2020 I visited CityMD in Astoria, ** (where I resided at the time while I was completing medical school) to obtain a COVID-19 swab prior to boarding a flight. At the time, it was indicated that all COVID-19 testing was free of charge under the federal government. Even so, I had to provide my insurance information to CityMD before receiving the swab (I had commercial insurance through my medical school at the time). I never saw a physician during the visit and was simply swabbed by a nurse or medical assistant. I was reassured there was no co-pay or bill for COVID-19 swabs at the time. Come July 2022, I received a bill for $292 related to that COVID swab on December 17, 2020 along with a bill for a separate appointment on December 9, 2020 which is completely false. I never had a second appointment on December 9, 2020 with CityMD. Given this, I have been intermittently trying to get in contact both via email and telephone with CityMD and they simply do not pick up their phone. I have been on hold for multiple hours without any human agent ever getting in contact with me. The billing notices persist as I have not paid the balance since I believe this is fraudulent billing. Recently, I've been receiving emails from CityMD threatening to escalate my bill to a collections agency. A quick internet search shows this is a widespread issue in the ** metro area and **. I wholly believe this is fraudulent billing, and to not be able to get in contact with anyone from CityMD to dispute this charge is completely reckless and irresponsible of CityMD and puts the customer in a powerless/no-win situation. For this reason, I believe this issue should be investigated further.

 **Customer response**
11/14/2022

Better Business Bureau:

At this time, **I have not been contacted by CityMD** regarding complaint **ID ********.**



**Initial Complaint**
09/28/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Unanswered

Hi,Regarding Bill ID: **** - **** * **** City MD charged me for a doctor's visit and NOT a covid test. They do not answer their phones and the "contact us" feature on their website errors out when trying to send a message. My insurance has been trying to reach City MD but no one is answering City MD is trying to send my outstanding balance to the collections agency. I have gotta multiple covid test from them, and never charged.My insurance United Healthcare never got the bill for the covid test. They changed them for a doctor's visit. I have previous receipts with the same results from cityMD of just covid test which should not have a cost.Payer Claim Number: CW ******** The total bill they expect me to pay for a covid test is $254. Attached is the results of my test and what was done.Thanks,******



**Initial Complaint**
09/28/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered

I received covid tests both me and my wife 1/2021 and were told no out of pocket would be issued. About 3 weeks ago we both received bills for patient responsibility of $50 each and when i called them(waited on hold for 1hr 40mins) they told me that i need to call my insurance company. So i did and was told they coded the cases incorrectly and needed to reprocess them, the insurance company opened a grievance on our behalf. They continue to send bills, i have emailed them several times with all the needed information and they have failed to even acknowledge them. I tried calling and hung up after waiting almost 2 hrs on hold.



**Customer response**
10/23/2022

Better Business Bureau:

At this time, **I have not been contacted by CityMD** regarding complaint **ID ********.**

Sincerely,

*****************

 **Initial Complaint**                          **Complaint Type:** Billing/Collection Issues
09/20/2022                                    **Status:** Unanswered ⑦

I went to CityMD in *************, for a COVID test on Nov 10, 2020. I had a contracted with coworker who's positive at the office, since I commuted everyday to work, it was mandatory caution & required by the work. It was not my first time to go to CityMD for the covid test, they always told me at the visit that it would be free, and no charge would occurs at my end. Now, 2 years later, all of sudden I got an email I had a bill needs to pay to them, and they sent me a**** for $300 and it is impossible to reach them for a resolution. My insurance has changed from the back then, and I went to City MD for previous with same insurance, and never got a bill either.I've trying to reach to their billing department, and no one isn't answering, I have read online so many other ppls experiences same, that it should not be billed. I contacted my old insurance, they confirmed CityMD should not charge for my visit for Covid test, they're doing reclaiming my case. CityMD kept sending me text/email that my payment is past due.If CityMD wouldn't take any responsibilities and they continue to hound me for this money I will have to take a legal action.

 **Customer response**
10/15/2022

Better Business Bureau:

At this time, **I have not been contacted by CityMD** regarding complaint **ID ********.**

24.     Plaintiff, Martinez Reyes, obtained five Covid Tests at a CityMD: facility on June 11, 2020, on November 12, 2020, on March 24, 2021, on April 16, 2021, and on July 7, 2021. When Plaintiff walked in at the CityMD facility, on each occasion she was asked for her insurance information or to confirm the accuracy of the insurance information contained in the CityMD system relating to her. She was not told that CityMD would bill her insurer for a $300 "Office Visit" instead of a COVID Test on any of these occasions. She justifiably believed that each Covid Test would be free of charge to her.

25.     On Saturday, August 20, 2022, Plaintiff, Martinez Reyes, received the first email from CityMD telling her that her bill was ready to be paid. The email provided a link to the bill which indicated it was from Summit Health and City MD. Plaintiff, Martinez Reyes, was charged $550.13 for three of those five tests, the first of which was completed almost two years

before the bill was sent.

26.     Each of the Summit Health invoices sent to Plaintiff, Martinez Reyes, show a $0.00 charge for a COVID-19 test, and a $300.00 charge for an "Office Visit." The "Office Visit" charges appeared as "paid by insurance" on two of those bills (June 11, 2020, and July 7, 2021); however, the other three tests were only partially covered by insurance.  Accordingly, Summit Health billed Plaintiff a $550.13 shortfall in relation to three of its $300 "Office Visit" charges.

27.     The reason for this deficiency and the deficiencies in the bills Summit Health sent (or caused CityMD to send) also belatedly submitted to the Class was due to Summit Health's, or, at its behest, CityMD's, improper submission of Covid Test claims to their health insurers for a non-descript "Office Visit" rather than as a Covid Test.  As a result, each "Office Visit" reimbursement claim submitted by Summit Health, or, at its behest, by CityMD was treated by Plaintiff and Class members' health insurance as a doctor's visit that was subject to a co-pay and possible deductible.

28.     Summit Health submitted, or caused CityMD to, improperly submit insurance claims as "Office Visits" rather than as Covid Tests as the $300 it expected to receive for an Office Visit was greater than the amount they would receive if Summit Health coded, or required CityMD to code, their insurance claims as Covid Tests.

29.     Had Summit Health correctly coded and billed, or caused CityMD to correctly code and bill, for the actual services provided to Plaintiff and the Class which were COVID-19 Tests, they would have had no financial responsibility because of the requirements of the FFCRA and the CARES Act, which provide that no cost sharing shall be imposed for Covid

14

testing, and for "[i]tems and services furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro diagnostic product", namely the Covid test.  CARES Act § 6001(b)(2).

30.     Since the initial Summit Healthcare CityMD billing notice, which was sent almost two years after the first service indicated on the invoice, Summit Healthcare has been harassing, or caused CityMD to harass, Plaintiff with a series of emails and texts soliciting payment for these undue charges and threats to refer the bills to a collection agency. To this day, Plaintiff, Martinez Reyes, has received one bill in the mail, four bills by email and three text messages urging her to pay these bills.

31.     Summit Health's actions therefore constitute deceptive acts and practices in violation of New York General Business Law § 349.  Plaintiff, Martinez Reyes, and the members of the Class were deceived by Summit Health who concealed, or caused CityMD to conceal, from them that CityMD would be submitting claims to their health insurers for a non-descript "Office Visit" rather than for a Covid Test for which they would have no financial responsibility.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a class (the "Class") consisting of all persons who obtained a COVID-19 Test at a CityMD facility during the class period defined below and have been billed for any part of CityMD's charge for an "Office Visit" in connection with their Covid Test.

33.     Excluded from the Class are the Defendant's and CityMD's, directors, officers, and employees.

34.     Plaintiff reserves the right to amend the class definition, including the Class's possible division into subclasses, in order to obtain substantial justice for the wrongdoing asserted herein.

35.     The Class Period runs from April 1, 2020, to the present.

36.     The Class is so numerous that joinder of all members is impractical.  The Class is reasonably estimated to be composed of more than 100,000 class members. The Class members are easily ascertainable from the written records of or under the control of Summit Health.

37.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. Such common questions include:

   a)    Whether Defendant violated N.Y. General Business Law § 349 by deceptively concealing, or causing CityMD to conceal, from Plaintiff and the Class that their Covid Tests would be submitted to their insurance as general "Office Visits" which thereby would be subject to any applicable co-pays and deductibles;

   b)    Whether Defendant violated N.Y. General Business Law § 349 knowingly or willfully;

   c)    Whether Plaintiff and Class members have been damaged to the extent they paid any portion of Summit Health CityMD's "Office Visit" charges for a Covid Test; and

   d)    Whether Defendant should be enjoined from any further efforts to collect an "Office Visit" charge in connection with a Covid Test from Plaintiff and the members of the Class.

38.     Plaintiff's claims are typical of the claims of the Class in that they all have been similarly impacted by Defendant's common deceptive scheme.

16

39.     Plaintiff will fairly and adequately protect the interests of the Class.  She is committed to litigating this matter vigorously and has retained counsel with substantial experience and success in the prosecution of complex class action litigation, including class actions under the deceptive trade and practice laws of many States.  Neither Plaintiff nor Plaintiff's counsel have any interest that is adverse to the interests of the Class.

40.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint.  The cost to the Court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would also create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.  Plaintiff does not anticipate any likely difficulties in managing this action as a class action.

## AS AND FOR A FIRST CAUSE OF ACTION
### FOR VIOLATIONS OF N.Y. GENERAL BUSINESS
### LAW § 349 AND/OR OTHER SIMILAR LAWS IN EFFECT IN
### NEW JERSEY AND POTENTIALLY OTHER STATES

41.     Plaintiff incorporates the above allegations in this cause of action, as though set forth herein.

42.     Plaintiff brings this claim individually and on behalf of the members of the Class.

43.     N.Y. General Business Law § 349(a) declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

44.     Defendant's failure to inform, or its direction to CityMD not to inform, Plaintiff and the members of the Class that Summit Health, or CityMD, at its behest, would be submitting a claim for their Covid Test as a nonspecific "Office Visit" rather than as a Covid Test, thereby deceptively subjecting Plaintiff and the members of the Class to charges for their Covid Tests when they expected the tests to be free constitutes a deceptive practice in the conduct of Defendant's business in this State.

45.     Had Summit Health or CityMD coded their Covid Tests as Covid Tests, the charges would have been fully covered by Plaintiff's and Class member health insurance policies as mandated by the FFCRA § 6001(A)(2) and the CARES ACT.

46.     As a result of Defendant's deceptive practices, the Plaintiff and those members of the Class who have paid any portion of Summit Health CityMD's "Office Visit" bills charged in connection with their Covid Test have suffered damages as alleged above.

47.     Further, Summit Health knew or recklessly ignored that its hidden practice of subjecting Plaintiff and members of the Class to improper charges for their Covid Tests by submitting claims to their health insurers for the Covid Tests as nonspecific "Office Visits" was a deceptive practice in violation of GBL §349 because, *inter alia*, it chose not to submit claims to insurers indicating that the insureds had come to a CityMD facility for a COVID Test when it could have easily done so by indicating a CPT code for a COVID Test.  Additionally, that Summit Health did not initially bill, or cause CityMD to bill, Plaintiff and the members of the

18

Class after learning their insurer would not pay the full amount suggests that an initial determination was made that it would be improper to do so, which decision was over a year later reversed out of greed. As a result, an increase in the award of damages to Plaintiff and these members of the Class in an amount not to exceed three times the actual damages up to one thousand dollars is warranted.

48.     Plaintiff also seeks an injunction due to the violations of GBL §349 alleged herein enjoining and requiring Defendant to cease any further efforts, and to require Summit Health to cease and require CityMD to cease any efforts, to collect from Plaintiff and Class members any further amounts for Office Visits that due to insurers not fully reimbursing them for all of their improper "Office Visit" claim.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR UNJUST ENRICHMENT

49.     Plaintiff incorporates paragraphs 1-40 of the above allegations in this cause of action as if set forth fully herein.

50.     Plaintiff brings this claim individually and on behalf of the members of the Class who have paid any portion of Summit Health CityMD's "Office Visit" charges that are due to Summit Health improperly submitting or causing CityMD to improperly submit, Covid Tests as "Office Visits" to health insurers.

51.     Defendant has been unjustly enriched through its deceptive practice of concealing its scheme to submit Covid Test charges to Plaintiff and Class member health insurers as non-descript "Office Visits" to maximize its revenues for Covid Tests at the expense of Plaintiff and such members of the Class.

19

52.     Defendant has unjustly retained such payments despite knowing that it, or CityMD at its behest, deceived Plaintiff and Class members and intentionally subjected them to charges for their Covid Tests by miscoding their Covid Tests as "Office Visits" to the detriment of Plaintiff and the Class.

53.     Defendant has been unjustly enriched in the amount of potentially tens of millions of dollars.

54.     As a result, Defendant should be required to disgorge and/or require CityMD to disgorge, to Plaintiff and the members of the Class who have paid any portion of Defendant's improper "Office Visit" charges, the amount each has paid.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on her own behalf and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.  That this Court certify this case as a class action under pursuant to Federal Rule of Civil Procedure 23 and appoint Plaintiff and her counsel to represent the Class;

b.  Finding that Defendant's undisclosed scheme to bill health insurers for "Office Visits" instead of Covid Tests, and thereby subject Plaintiff and the Class to charges for their Covid Test, violates New York General Business Law § 349 *et seq* and similar laws of other States including New Jersey;

c.  Finding that Defendant knowingly or willfully violated GBL §349 *et seq.*

d.  Awarding Plaintiff and the members of the Class any amounts they have paid for Summit Health CityMD "Office Visit" charges resulting from their billing health insurers for an "Office Visit" instead of a Covid Test;

e.  Enjoining Defendant and requiring it to cease any efforts on the part of CityMD to continue efforts to collect for such "Office Visits;"

f.  Requiring Defendant, and that Defendant cause CityMD, to disgorge any amounts Plaintiff and the members of the Class have paid for CityMD "Office Visit" charges billed in connection with a Covid Test;

g.  Requiring that Defendant be ordered to pay pre- and post-judgment interest;

h.  Requiring that Defendant be ordered to pay Plaintiff's counsel's costs and disbursements incurred in connection with this action, including their attorney fees and expert fees; and

i.  Ordering such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands trial by jury as to all issues so triable.

Dated: November 21, 2022
Rye Brook, New York

/s/ Seth R. Lesser
Seth R. Lesser
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200
seth@klafterlesser.com

Janet Walsh
Francesca Iacovangelo
LOCKS LAW FIRM PLLC
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 838-3333
jwalsh@lockslaw.com
fiacovangelo@lockslaw.com

*Attorneys for Plaintiff*

21