UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANA MARTINEZ REYES,                              Case No. 22-cv-09916
individually and on behalf of
all others similarly situated,

            Plaintiffs,

    -against-

SUMMIT HEALTH MANAGEMENT, LLC,

           Defendant.
-------------------------------------------------------------x

## DECLARATION OF SETH R. LESSER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT, THE CLASS NOTICE PLAN, AND APPOINTMENT OF SETTLEMENT ADMINISTRATOR

SETH R. LESSER, an attorney admitted to the bar of this Court, declares, under penalty of perjury that:

1.    I am a partner in Klafter Lesser LLP, and counsel for named Plaintiff Ana Martinez Reyes and the proposed Settlement Class (collectively "Plaintiffs"). I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Proposed Class Action Settlement, the Notice Plan, and Appointment of the Settlement Administrator, including the sending of settlement notice and the scheduling of a final approval hearing, and other relief as set forth in the proposed Preliminary Approval Order attached as Exhibit 2 to the Settlement Agreement, which Settlement Agreement is attached as Exhibit A hereto, and which sets forth the terms of the proposed settlement reached in this action (the "Action") between Plaintiff, on her own behalf and on that of the putative class in this case (the "Class") and Summit Health

1

Management, LLC ("Defendant" or "Summit") (together, Plaintiffs and Defendant are referred to herein as "the Parties").[1]

2.  On November 21, 2022, after a thorough investigation of the claims and potential defenses by Plaintiff's counsel, Plaintiff Martinez Reyes filed her Complaint (Dkt. No. 1) in this Court, on behalf of herself and others similarly situated.

3.  Plaintiff alleged that Defendant circumvented the Family First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, Economic Security Act (the "CARES Act") by imposing cost-sharing for Covid tests. Plaintiff further alleged that, by failing to inform patients that a coinsurance obligation or a co-pay would be imposed for office visits related to Covid tests, Defendant violated New York General Business Law §349 and New Jersey Consumer Fraud Statute, N.J. Stat. Ann. §56:8-19. *See* Complaint ¶¶ 32.

4.  In the Complaint, Plaintiff sought to recover the refund of all coinsurance payments for Covid tests, and treble damages under the relevant statutes in New York and New Jersey. *See* Complaint ¶¶ 55. After appearing in the case, Defendant's attorneys informed Plaintiff's counsel that it had already decided to refund all allegedly improperly billed Covid tests and that, therefore, Plaintiff's case would, upon the refunding, be mooted.

5.  While Defendant had expressed a willingness to consider settling with Plaintiff and her counsel then, Plaintiff's counsel, the undersigned, responded that even if the amounts were refunded, Plaintiff and the putative class would still possess claims for treble damages under New York GBL § 349 and the New Jersey Consumer Fraud Act. Defendant disputed this argument, strongly denied any violation of the FCRA or CARES Act, and took the position that Plaintiff would

---

[1] The Settlement Agreement has four numbered exhibits: Exhibit 1 (proposed order for final approval and judgment); Exhibit 2 (proposed form of preliminary approval order); Exhibit 3 (proposed form of Notice to Class Members); and Exhibit 4 (CAFA notice).

also be unable to prove the intent or damages under either the New York GBL or New Jersey Consumer Fraud Act.

6. The parties then agreed that, in order to avoid the burden and expense of unnecessary formal litigation practice, Defendant's time to respond would be extended and the parties would in good faith address their respective views of the case. This exchange included the production from Defendant of documents in response to requests made by Plaintiff, and, specifically, included documentation from Defendant showing Summit's claims to insurers, the correspondence between Summit and its insurers, and Summit's decision to balance bill in 2022.

7. Through the winter and spring until the end of April 2023, the parties engaged in a discovery and colloquies process which, to all intents and purposes, represented a substantially complete documentary discovery process. The parties had extensive discussions as to Plaintiff's claims and as to the evidence that supported each side's positions, as well as the applicable law and the likelihood of Plaintiff prevailing on such matters as class certification and the merits in order to obtain the statutory liquidated damages. The requested and produced materials included internal company emails and memoranda, as well as correspondence between Summit and various insurance companies. There were also lengthy back-and-forth colloquies between counsel, which led both sides to agree that they fully understood the other's positions.

8. In the end, while Plaintiff believed that the documents provided in the discovery process proved her position, Summit, in turn, strongly denied any liability. Both parties, however, agreed that, were the case to proceed to litigation, the likelihood was that the matter would take substantial time and result in substantial expense to all parties.

9. Given the disputed factual issues, and the extensive discussions carried out over several months, the parties agreed they were fully informed about each other's position and decided to start settlement discussions.

10. Accordingly, to see if the time and effort could be better used towards a mediated settlement, the parties agreed to mediate and chose Roger Deitz, a respected and experienced third-party mediator.

11. Although originally scheduled for April 25, 2023, due to a personal matter affecting the mediator, the mediation was postponed and held on May 31, 2023. Late in the afternoon of that day, after extensive efforts by the mediator and negotiations between the parties, the parties reached an agreement in principle to settle the case. The parties then negotiated the full Settlement Agreement now presented to the Court as Exhibit A to this Declaration.

12. Assuming approval by the Court, and without Defendant admitting any liability (and, indeed, expressly denying all such liability), the Settlement's primary terms provide that:

1. Defendant will pay no more than $1.8 million as a common settlement fund to settle the captioned litigation (the "Settlement Fund").

2. Defendant will stipulate to the certification of a Rule 23 class, for settlement purposes only, consisting of All persons who paid CityMD bills up to and including December 1, 2022, for a Covid test that was conducted at a CityMD facility located in either New York or New Jersey (the "Settlement Class").

3. The Settlement Fund will fund: (1) the fees and costs of Notice of the Settlement and payment of the settlement amounts to the Settlement Class members by a Claims Administrator to be selected by Plaintiffs' Counsel, subject to the approval of the Court, except that up to $50,000 of the cost of the mailing the payment of the settlements amounts by the Claims Administrator shall be paid by Defendant and any amount in excess of $50,000 shall be paid out of the Settlement Fund; (2) the payment of attorneys' fees to Plaintiffs' counsel (not to exceed one-third of the Settlement Fund, subject to the Court's approval), (3) reimbursement of the expenses of Plaintiffs' counsel, subject to the Court's approval; (4) payment of a Service Award to the named Plaintiff, not to exceed $10,000, and subject to the Court's approval; and (5) after subtracting (1), (2), (3) and (4) (the

"Net Settlement Amount"), the direct payment to members of the Settlement Class by Defendant of their shares of the Net Settlement Amount, to be determined on a pro rata basis, based on the total amounts paid by each Settlement Class member to Defendant pursuant to the COVID billings at issue in this lawsuit. Payments will be made in pro rata proportion to the amounts of the refunded charges previously paid to Settlement Class members by Summit except that, in a final settlement agreement, a minimum amount is expected to be determined for any amounts to go to any single Settlement Class member. Defendant will not object to the attorney fee request, expense reimbursement request or the Service Award request, provided they are not in excess of the respective amounts indicated in this paragraph. In the event that there are uncashed checks following the distribution of the settlement checks, and no further update of addresses can be addressed by a Level 1 trace by the Claims Administrator, any remaining amounts will be sent to Summit Medical Group Foundation, Inc. d/b/a Summit Health Cares as a *cy pres* entity.

4. Subject to the Court's final approval of the Settlement described herein, all members of the Settlement class and the named Plaintiff shall be deemed to have released all claims asserted or could have been asserted related to the payment for CityMD COVID tests at issue in the above-captioned litigation.

5. Class Members will be afforded the opportunity to opt out or object (if they do not opt-out) to the settlement.

The complete settlement terms are set forth in the Settlement Agreement, Exhibit A hereto.

13. Plaintiff believes that the recovery here is an excellent result. Class members have already been refunded by CityMD for the amount of Office Visits that were charged, and will each receive at least $5.00 constituting the additional damages they might have been able to assert under New York and New Jersey's consumer protection laws, with the final amount to be determined pro rata, based on the amount each Class member was refunded. The recovery number here, to be paid directly to the Class without the need for a claim form, is, Class Counsel submits, undoubtedly a fair, reasonable, and adequate result, particularly where the Class members have been already repaid 100% of their actual potential damages.

14. The Settlement was achieved through arm's-length negotiations between the parties with the assistance of an experienced neutral third-party mediator. And, as noted, Class Counsel was thoroughly versed in the law and issues attendant upon the case.

15. Notwithstanding Class Counsel's willingness to try the case – and Class Counsel have a record of trying cases, including class actions – the legal issues presented real risk. In fact, to prove that she is entitled to liquidated damages under the relevant statutes, Plaintiff would have to prove that Defendant knowingly or willfully engaged in deceptive business acts and practices (i.e., was liable for the liquidated damages provisions of GBL § 349) at trial, a high hurdle to clear, and one that Defendant had shown it was willing to vigorously challenge.

16. And even had Plaintiff prevailed, it would be unrealistic not to expect an appeal. Both at trial and on any appeal, of course, there would have been yet additional costs and time incurred – expert costs, trial preparation and pre-trial motion practice costs and trial costs – and at least some risk of loss. While Plaintiff may have been able to obtain a larger amount at trial, avoidance of these risks, expenditure of time, and resources clearly benefits all parties and the interests of justice more broadly, and particularly benefits the Class, the relief for whom, as discussed, we believe to be excellent.

17. Further, Plaintiff's counsel believes this Settlement to be fair and reasonable and it is entirely reasonable and fair to say that counsel for Plaintiff have extensive backgrounds, history, and records of success in representing consumers in complex litigation and class actions, particularly consumer class actions. *See* the Firm Resumes of Plaintiffs' counsel, attached as Exhibit C hereto (my CV, my firm's resume and Locks Law Firm's firm resume).

18. Defendant has agreed to pay, and Class Counsel will seek to have awarded, up to $8,000 in costs and expenses and $600,000 in fees, for a total of $608,000. At the final approval

stage, Plaintiff will fully brief the fairness and reasonableness of the requested attorneys' fees and expenses under the factors articulated by the Second Circuit in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000).

19. Furthermore, the Settlement notice and administration, if the present motion is approved by the Court, will be administered by an independent and experienced third-party settlement administrator, American Legal Claim Services LLC, from whom Plaintiff obtained a capped cost amount which is reasonable in my experience, and which fees and costs will be paid by Defendant, subject to reimbursement arising from uncashed checks.

20. Finally, Class Counsel has fully advised the Plaintiff of the Settlement Agreement, who approves of and consents to the Settlement.

21. On behalf of the Plaintiff, I believe it is fair to say that the proposed Settlement is the product of two fully informed sides negotiating intensely at arm's length.  The Settlement offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether at trial or upon appeal, had the litigation proceeded.

22. Annexed hereto as Exhibit A is a copy of the fully executed Settlement Agreement and its four numbered exhibits.

23. Annexed hereto as Exhibit B is a copy of the Complaint.

24. Annexed hereto as Exhibit C is a copy of the firm resumes of Klafter Lesser LLP and Locks Law Firm PLLC.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 29th day of June 2023, in Rye Brook, New York.

_____
Seth R. Lesser