UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x        Case No. 22-cv-09916
ANA MARTINEZ REYES,
individually and on behalf of all others
similarly situated,

                          Plaintiff,

          -against-

SUMMIT HEALTH MANAGEMENT, LLC,

                    Defendant.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT, THE CLASS NOTICE PLAN, AND APPOINTMENT OF SETTLEMENT ADMINISTRATOR

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Janet Walsh
Francesca Iacovangelo
LOCKS LAW FIRM PLLC
622 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 838-3333

Attorneys for Plaintiff and the
Proposed Settlement Class

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………...1

OVERVIEW OF THE LITIGATION……………………………………………………….2

SUMMARY OF KEY SETTLEMENT TERMS……………………………………………4

ARGUMENT……………………………………………………………………...6

I.    The Legal Standards for Preliminary Approval of a Class Claim ................................... 6

II.    THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2) ........... 7

    A.    Rule 23(e)(2)(A):  The Class Representative and Class Counsel have adequately represented the Class................................................................................................. 8

    B.    Rule 23(e)(2)(A):   The Proposal was negotiated at arm's length..........................9

    C.    Rule 23(e)(2)(C)(i):  The relief provided for the Class is adequate, taking into account the costs, risks, and delay of trial and appeal............................................10

    D.    Rule 23(e)(2)(C)(ii):  The relief provided for the Class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required..........11

    E.    Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment.......................................................................12

    F.    Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).......................................................................................13

    G.    Rule 23(e)(2)(D):  The proposal treats Class Members equitably relative to each other. ....................................................................................... 13

    H.    Remaining Grinnell factors are likely to be satisfied.......................................13

III.    THE COURT WILL LIKELY BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES. ..................................................................... 15

    A.    The Rule 23(a) Factors...................................................................15

        1.    Numerosity..................................................................15

        2.    Comminality..................................................................16

        3.    Typicality..................................................................16

4.    Adequacy.............................................................................................................17

B.    The Rule 23(b) Factors Are Likely To Be Met.........................................................17

1.    Predominance.................................................................................................17

2.    Superiority.....................................................................................................18

IV.    THE PROPOSED NOTICE PLAN SATISFIES FED. R. CIV. P. 23(c)(2)(B) ............... 18

CONCLUSION...................................................................................................................20

## Table of Authorities

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 17, 18

*Auto Style Leasing Ltd. v. Evans*,
   1995 U.S. Dist. LEXIS 4228 (S.D.N.Y. Mar. 31, 1995) ....................................... 11

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
   2016 U.S. Dist. LEXIS 124202 (E.D. Pa. Sept. 12, 2016) ..................................... 9

*Butt v. Megabus Ne. LLC*,
   2012 U.S. Dist. LEXIS 137683 (S.D.N.Y. Sep. 25, 2012) ................................... 13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................... 7, 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .................................................................................. 9

*Hart v. BHH, LLC*,
   2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ................................... 13

*Hesse v Godiva Chocolatier*,
   2022 US. Dist. LEXIS 72641 (SDNY Apr. 20, 2022) ......................................... 15

*Goldberger v. Integrated Res. Inc.*
   209 F.3d 43 (2d Cir. 2000) ................................................................................ 12

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................... 8, 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................................... 9

*In re GSE Bonds*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................ 16

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................... 15, 17

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) .................................................................................. 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) ................................... 14

*Marin v. Dave & Busters, Inc.*,
   2019 U.S. Dist. LEXIS 232134 (S.D.N.Y. July 19, 2019) ................................... 13

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
    2023 U.S. Dist. LEXIS 95908 (S.D.N.Y. June 1, 2023) ................................................... 7, 14

*Torres v. Gristede's Operating Corp.*,
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ................................................... 13

## Codes, Statutes, and Other Regulations

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

N.J. Stat. Ann. §56:8-19 ................................................................................................... 1, 2, 6

New York General Business Law §349 ............................................................................. *passim*

## INTRODUCTION

Plaintiff Ana Martinez Reyes ("Plaintiff") on her own behalf and on behalf of the members of the proposed settlement class (the "Class") submits this memorandum in support of her Motion for Preliminary Approval of the Proposed Class Action Settlement, the Class Notice Plan, and Appointment of Settlement Administrator (the "Motion") with regard to the proposed settlement of this action (the "Settlement") with Defendant Summit Health Management, LLC ("Defendant" or "Summit").

Plaintiff is pleased to be able to present this Settlement to the Court in what, it is fair to say, has been a most expedited manner. The case was brought in November 2022 and resolved last month, but only after extensive meets and conferrals between the parties with Defendant having provided substantial documentary materials, and with the assistance of, and after a full day of mediation before, Roger Deitz, an independent mediator with over 25 years of experience as a neutral.

The Settlement's terms are memorialized in the Settlement Agreement ("Settlement Agreement") attached as Exhibit A to the accompanying Declaration of Seth R. Lesser ("Lesser Dec."). In short, as is discussed at greater length below, the Settlement resolves consumer fraud claims brought under New York General Business Law §349 and the New Jersey Consumer Fraud Statute, N.J. Stat. Ann. §56:8-19 arising out of Defendant's alleged billing practices for Covid-19 tests. The Settlement Agreement essentially provides that Defendant will establish, through a settlement administrator, a $1.8 million Settlement Common Fund[1] that shall be used to pay: (1) the fees and costs of dissemination of the Class Notice and the Notice Plan by the Settlement Administrator; (2) the payment of any award of attorneys' fees to, and reimbursement

---

[1] This memorandum will use the defined terms set forth in the Settlement Agreement.

of costs and expenses of, Class Counsel; (3) the payment of any award of a Service Award to the named Plaintiff; (4) the Settlement amounts to the Settlement Class Members; and (5) the Settlement Administration costs (those associated with the Class Notice Plan and payment to the Class Members) except that Defendant will separately pay the cost of the mailing of the settlement checks to Class members up to the amount of $50,000, the rest of the check mailing costs to come out of the Settlement Common Fund.

For the reasons set forth below, Plaintiff submits that this Court should preliminarily approve the Settlement and direct notice to be provided to the Class because the Court "will likely be able to" grant final approval of the Settlement under the criteria set forth in Federal Rule of Civil Procedure 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

## <u>OVERVIEW OF THE LITIGATION</u>

Summit Health Management, LLC is a New Jersey corporation that operates CityMD, with about 150 urgent care clinics in New York and New Jersey providing healthcare services including, as is relevant here, Covid tests during patient visits to its clinics. Plaintiff's claim is that Defendant circumvented the Family First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, Economic Security Act (the "CARES Act") by imposing cost-sharing for Covid tests. Plaintiff specifically alleged in her Complaint (ECF Doc. No. 1) that, by failing to inform patients that a coinsurance obligation or a co-pay would be imposed for office visits related to Covid tests, Defendant violated New York General Business Law §349 and New Jersey Consumer Fraud Statute, N.J. Stat. Ann. §56:8-19. *See* Complaint ¶¶ 32. In the summer of 2022, Plaintiff, and other members of the putative class, received bills for outstanding costs related to their Covid tests performed at CityMD, with many of these tests dating back to 2020 and 2021.

2

The Complaint was filed on November 21, 2022. After appearing in the case, Defendant's attorneys informed Plaintiff's counsel that it had already decided to refund all allegedly improperly billed Covid tests and that, therefore, Plaintiff's case would, upon the refunding, be mooted. *See* Lesser Decl. at ¶¶ 4-5. While Defendant had expressed a willingness to consider settling with Plaintiff and her counsel then, Plaintiff's counsel, the undersigned, responded that even if the amounts were refunded, Plaintiff and the putative class would still possess claims for treble damages under New York GBL § 349 and the New Jersey Consumer Fraud Act. Defendant disputed this argument, strongly denied any violation of the FCRA or CARES Act, and took the position that Plaintiff would also be unable to prove the intent or damages under either the New York GBL or New Jersey Consumer Fraud Act.

The parties then agreed that, in order to avoid the burden and expense of unnecessary formal litigation practice, Defendant's time to respond would be extended and the parties would in good faith address their respective views of the case. This included the production from Defendant of documents in response to requests made by Plaintiff, and, specifically, included documentation from Defendant showing Summit's claims to insurers, the correspondence between Summit and its insurers, and Summit's decision to balance bill in 2022. In substantial measure, the parties' willingness to engage in this informal, but fairly comprehensive, discovery process was driven by the parties' recognition of the experience and quality of representation on both sides.

Through the winter and spring until the end of April 2023, the parties had extensive discussions as to Plaintiff's claims and as to the evidence that supported each side's positions, as well as the applicable law and the likelihood of Plaintiff prevailing on such matters as class certification and the merits in order to obtain the statutory liquidated damages. Lesser Dec. ¶ 7. Defendant produced specifically requested materials and supplemented its production when Plaintiff requested

follow-on materials. The requested and produced materials included internal company emails and memoranda, as well as the correspondence between Summit and various insurance companies. There were also lengthy back and forth colloquies between counsel. Lesser Dec. ¶ 8.

At the end of this discovery and colloquy process – which, to all intents and purposes represented a substantially complete document discovery process – both sides agreed that they fully understood the other's positions and further agreed that, were the case to be litigated, the likelihood was that the matter would take substantial time and result in substantial expense. Lesser Dec. ¶ 9. Accordingly, to see if the time and effort could be better used towards a mediated settlement, the parties agreed to mediate and chose Roger Deitz, a respected and experienced third-party mediator.

Although originally scheduled for April 25, 2023, due to a personal matter affecting the mediator, the mediation was postponed and held on May 31, 2023. Late in that afternoon, after extensive mediator efforts and negotiations between the parties, the parties reached a settlement agreement in principle. The parties then negotiated the full Settlement Agreement now presented to the Court as Exhibit A to the accompanying Declaration. Lesser Dec. ¶ 11. Throughout, Summit denied having violated any law and contended that Plaintiff would not ultimately prevail on the merits. Plaintiff asserted that triable issues of fact would exist as to whether Defendant attempted to improperly obtain payment of co-pays and co-insurance from consumers who had Covid tests done at CityMD facilities. There was also a fulsome discussion of legal issues and the meaning, and potential applicability, of provisions of the CARES Act and FFCRA, as well as whether Plaintiff could obtain Rule 23 certification of any class of allegedly misled consumers.

## SUMMARY OF KEY SETTLEMENT TERMS

Assuming approval by the Court, and without Defendant admitting any liability (and instead expressly denying all such liability), the Settlement's primary terms provide that:

4

1. Defendant will pay no more than $1.8 million as a common settlement fund to settle the captioned litigation (the "Settlement Fund"). Settlement Agreement ¶ 5.

2. Defendant will stipulate to the certification of a Rule 23 class, for settlement purposes only, consisting of all persons who paid CityMD bills up to and including December 1, 2022, for a Covid test that was conducted at a CityMD facility located in either New York or New Jersey (the "Settlement Class"). Settlement Agreement ¶ 4.1.__

3. The Settlement Fund will fund: (1) the fees and costs of Notice of the Settlement and payment of the settlement amounts to the Settlement Class members by a Claims Administrator to be selected by Plaintiff's Counsel, subject to the approval of the Court, except that up to $50,000 of the cost of the mailing the payment of the settlements amounts by the Claims Administrator shall be paid by Defendant and any amount in excess of $50,000 shall be paid out of the Settlement Fund; (2) the payment of attorneys' fees to Plaintiff's counsel (not to exceed one-third of the Settlement Fund, subject to the Court's approval), (3) reimbursement of the expenses of Plaintiff's counsel, subject to the Court's approval; (4) payment of a Service Award to the named Plaintiff, not to exceed $9,000, and subject to the Court's approval; and (5) after subtracting (1), (2), (3) and (4) (the "Net Settlement Amount"), the direct payment to members of the Settlement Class by Defendant of their shares of the Net Settlement Amount, to be determined on a pro rata basis, based on the total amounts paid by each Settlement Class member to Defendant pursuant to the COVID billings at issue in this lawsuit. Payments will be made in pro rata proportion to the amounts of the refunded charges previously paid by Settlement Class members by Summit except that, in a final settlement agreement, a minimum amount is expected to be determined for any amounts to go to any single Settlement Class member. Defendant will not object to the attorney fee request, expense reimbursement request or the Service Award request, provided they are not in excess of the respective amounts indicated in this paragraph. In the event that there are uncashed checks following the distribution of the settlement checks, and no further update of addresses can be addressed by a Level 1 trace by the Claims Administrator, any remaining amounts will be sent to Summit Medical Group Foundation, Inc. d/b/a Summit Health Cares as a *cy pres* entity. Settlement Agreement ¶¶ 5.1-5.2.2.

4. Subject to the Court's final approval of the Settlement described herein, all members of the Settlement class and the named Plaintiff shall be deemed to have released all claims asserted or could have been asserted related to the payment for CityMD COVID tests at issue in the captioned litigation. Settlement Agreement ¶ 4.4

5. Class Members will be afforded the opportunity to opt out or object (if they

do not opt-out) to the settlement. Settlement Agreement ¶ 4.4.3.

The complete settlement terms are set forth in the Settlement Agreement. (Lesser Dec. at Exhibit A).

## **ARGUMENT**

This Settlement would, if approved by the Court, resolve all claims asserted in the litigation, which are brought under New York General Business Law §349 and New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-19, or the claims that could have been asserted in the litigation related to the matters alleged in the Complaint in the litigation. Plaintiff believes that the recovery here is an excellent result. Class members have already been refunded by CityMD for the amount of Office Visits that were charged, and will receive an additional amount of at least $5.00, constituting the additional damages they might have been able to assert under New York and New Jersey's consumer protection laws, with the final amount to be determined pro rata, based on the amount each Class member was refunded. The recovery number here, to be paid directly to the Class without the need for a claim form, is, Class Counsel submits, undoubtedly a fair, reasonable, and adequate result, particularly where the Class members have been already repaid 100% of their actual potential damages.

## I.     **The Legal Standards for Preliminary Approval of a Class Claim**

The preliminary approval of the settlement of a class claim is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(e), as amended in 2018, establishes that, at the "preliminary approval" stage, a district court must address two questions: (1) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)," and (2) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."

6

When conducting this first analysis, courts must determine whether the settlement is fair, reasonable and adequate based on: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). In addition to these four factors, courts in the Second Circuit also consider whether the settlement is fair, reasonable, and adequate under the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which overlap with Rule 23(e)(2)(C)-(D).[2] *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 2023 U.S. Dist. LEXIS 95908, at *4 (S.D.N.Y. June 1, 2023) (*quoting In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 U.S. Dist. LEXIS 81440, at *5 (S.D.N.Y. Nov. 8, 2006)).

## II.    THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)" it looks to Rule 23(e)(2)'s approval factors:

> (2)    *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> (i)    the costs, risks, and delay of trial and appeal;

---

[2] The Grinnell factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund oof the best possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

        (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As discussed below, Plaintiff will likely satisfy each of these factors:

**A.     Rule 23(e)(2)(A):  The Class Representative and Class Counsel have adequately represented the Class.**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (to support a settlement, class counsel should show that "[t]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.")

Here, not only is there the evidence, as discussed, of the documentary discovery – which effectively constituted a substantial proportion of what would be the paper discovery of the liability issues here – but also the substantive back and forth colloquies between counsel which allowed both sides to fully understood the other's positions. This process was grounded in a recognition on both sides that counsel were experienced in prosecuting (on Plaintiff's side) consumer class claims as well as defending them (on Defendant's side). This permitted a professional, efficient mechanism to take place that, most expeditiously, led to the mediated resolution.

Class Counsel believes that it is fair to say that they had vigorously pursued the claims of the Class and were well situated to proceed with the litigation all the way through, including to

trial, if necessary. Lesser Dec. ¶ 15. It is therefore likely that the Court will find this factor to be satisfied.

**B.      Rule 23(e)(2)(B):  The proposal was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests."  Advisory Committee Notes.  Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations between the parties with the assistance of an experienced neutral third-party mediator. Lesser Dec. ¶ 10. "[T]he participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 U.S. Dist. LEXIS 124202, at *15 (E.D. Pa. Sept. 12, 2016) (quotation omitted); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (court may find the negotiating process fair where, as here, "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.") (citation omitted); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) (if settlement achieved through arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Furthermore, "[i]f the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the

Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Here, counsel for the proposed Class are exceedingly experienced class action plaintiffs' counsel, and both parties are represented by counsel with extensive experience and a deep understanding of the risks of litigation and benefits of the Settlement. It is therefore likely that the Court will find this factor to be satisfied.

**C.    Rule 23(e)(2)(C)(i):  The relief provided for the Class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome."  Advisory Committee Notes.  This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  *Id.*

Here, this factor is also likely to be satisfied. As discussed above, all Class members have already been refunded by Summit for the entire amount of the coinsurance payments they had paid to Defendant. The Settlement Agreement, which resolves Class members' claim for treble damages, is therefore in addition to the refunded amounts already received by the Class. It provides that the recovery to each Class member will be made in pro rata proportion to the amounts of the refunded charges previously paid to Settlement Class members by Summit except, with a minimum amount of $5.00 to go to any single Settlement Class member. Class members will be paid directly, based on Defendant's records, and will not need to fill out any claim form, making the payment faster, easier, and more efficient.

This result has to be measured against risks and costs. Absent settlement, the litigation would have proceeded, triggering motions (including, most immediately, a motion to dismiss by Summit), potentially further discovery requests, depositions, likely expert reports, and even trial,

resulting in substantial litigation costs. Furthermore, notwithstanding the Parties' willingness to try the case, the legal issues presented real risk. In fact, to recover liquidated damages under New York General Business Law §349, Plaintiff would have to prove that Defendant knowingly or willfully engaged in deceptive business acts and practices (i.e., was liable for the liquidated damages provisions of GBL § 349) at trial, a high hurdle to clear, and one that Defendant had shown it was willing to vigorously challenge. See *Auto Style Leasing Ltd. v. Evans*, No. 92 CIV. 6837 (CSH)(LB), 1995 U.S. Dist. LEXIS 4228 at *12 (S.D.N.Y. Mar. 31, 1995) (holding that: "[c]ommitting a violation willfully means more than just doing the act . . .it means an intentional and deliberate doing of the act or failure to do the act with an awareness of the fact that [it] failed to comply with the requirements of law." (internal quotations and citation omitted)).

And even had Plaintiff prevailed, it would be unrealistic not to expect an appeal – particularly where the core issue presented was whether Summit had acted in bad faith vis-à-vis consumers in the face of rapidly promulgated, evolving, and complex billing rules and guidance from payors relating to the Covid-19 pandemic. While Plaintiff may have been able to obtain a larger amount should the case have gone to trial and a verdict sustained on appeal, avoidance of these risks as well as expenditure of time and resources clearly benefits all parties and the interests of justice more broadly, and particularly benefits the Class, the relief for whom, as discussed, we believe to be excellent.

     **D.**    <u>**Rule 23(e)(2)(C)(ii):  The relief provided for the Class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required.**</u>

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Advisory Committee Notes.  This factor is likely to be satisfied, first, because this is

a case in which the settlement Class is a defined group of specific individuals who have been identified from Defendant's records. But, most importantly, this factor is likely to be met because Class Members do <u>not</u> have to fill in or file and submit a claim form to receive payment. Far from being 'unduly demanding," here there is no claims process at all; if the Settlement is approved, all Class Members will be directly paid. This factor is likely to be met.

**E.      Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Rule 23 Advisory Committee Notes. Here, the attorney-fee provisions were reached as a matter of a negotiation overseen by an experienced mediator, and the Defendant has agreed not to object to a request of attorneys' fees up to one third of the Common Fund Settlement Amount ($1.8 million). Lesser Dec. ¶___.

At the final approval stage, Plaintiff will fully brief the fairness and reasonableness of the requested attorneys' fees and expenses under the factors articulated by the Second Circuit in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000). In the meantime, it is likely that the amount and timing of the proposed attorneys' fees and expenses will support final approval because (1) Class Counsel will not, like the Class itself, get paid until after final approval; (2) the expenses Class Counsel incurred and spent in this litigation were all necessarily incurred and demonstrable through Class Counsel's records, including such items as review of discovery documentation and court and mediation costs; (3) the fee award is justified in light of the extensive negotiations that were undertaken to reach the Settlement Agreement; (4) the fee award will be further appropriate inasmuch as the lodestar multiplier will be reasonable and modest and well within applicable guidelines, particularly where, as here, a good result was

obtained exceedingly expeditiously; and (5) the fee award was the product of negotiation with an experienced mediator. Plaintiff believes this factor is likely to be satisfied.[3]

### F.    Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, besides the Term Sheet negotiated by the parties immediately after the mediation, which is superseded by the Settlement Agreement, there are no "side agreements" concerning this settlement.  Thus, this factor is likely to be satisfied.

### G.    Rule 23(e)(2)(D):  The proposal treats Class Members equitably relative to each other.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Committee Notes.  This factor is likely to be satisfied.  Each Class Member will receive a minimum amount of recovery equal for all Class Members, and a pro rata distribution based on the amount that they previously paid to Defendant, and that Defendant has subsequently refunded. This is consistent with this action's only seeking statutory damages.

### H.    Remaining Grinnell factors are likely to be satisfied.

The *Grinnell* factors not expressly assessed under Rule 23(e)(2)(C)(i) include:  "(2) the reaction of the class to the settlement; (3)  the stage of the proceedings and the amount of discovery completed;

---

[3] In addition, although not specifically addressed in Rule 23(e)(2), the proposed service award of $9,000 to Ms. Martinez Reyes is within the range typically awarded to individual named plaintiffs in comparable cases in this District, and is appropriate for a named plaintiff to receive for having been willing to put their name on a federal class action lawsuit and for having, as did Ms. Martinez Reyes, taken the time to aid counsel in the case. . *See, e.g.*, *Marin v. Dave & Busters, Inc.*, 15 Civ. 3608 (AKH), 2019 U.S. Dist. LEXIS 232134, at *8 (S.D.N.Y. July 19, 2019) ($35,000 incentive award); *Hart v. BHH, LLC*, 2020 U.S. Dist. LEXIS 173634, at *13 (S.D.N.Y. Sep. 22, 2020) ("[Service] [a]wards on an individualized basis have generally ranged from $2,500 to $85,000."); *Butt v. Megabus Ne. LLC*, 2012 U.S. Dist. LEXIS 137683, at *24 (S.D.N.Y. Sep. 25, 2012) (finding reasonable a service award of $15,000 to named plaintiff); *Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144, at *22 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

 *First*, considering that the Class has not yet received the Notice, which is before this Court for approval, the analysis of the first remaining Grinnell factor is premature. However, the named Plaintiff's favoring the Settlement should be sufficient at this point. *See Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 2023 U.S. Dist. LEXIS 95908 (S.D.N.Y. June 1, 2023) (holding that "Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued."). *Grinnell* factor (2) is therefore likely to be met.

 *Grinnell* factor (3) considers "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 U.S. Dist. LEXIS 128998, 2020, at *7 (S.D.N.Y. July 21, 2020). Here, as discussed above, Plaintiff conducted substantial discovery before the mediation and reaching the Settlement. Accordingly, *Grinnell* factor (3) is likely to be satisfied.

 When analyzing *Grinnell* factor (7), the court should next consider a defendant's ability to withstand a greater judgment. "However, not all of the *Grinnell* factors must be satisfied, and a defendant's ability to withstand a greater judgment, does not, standing alone, suggest that the settlement is unfair." *Hesse v. Godiva Chocolatier*, No. 1:19-cv-0972-LAP) 2022 U.S. Dist. LEXIS 72641, at *30 (S.D.N.Y. Apr. 20, 2022.). Here, considering that all Class Members have been refunded for the coinsurance payments already made, and the Settlement Agreement will resolve their only outstanding

claim for additional statutory damages, Plaintiff believes that the recovery here is an excellent result. Accordingly, *Grinnell* factor (7) is likely to be satisfied.

The final *Grinnell* factors – (8) and (9) – require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Hesse v Godiva Chocolatier*, No. 1:19-cv-0972-LAP, 2022 US. Dist. LEXIS 72641, at *30-31 (SDNY Apr. 20, 2022). Here, each Class Member will receive, without having to fill out any claim form, minimum compensation of $___ per Class Member, and a pro rata distribution from the Net Settlement Fund in proportion to the amount paid to Summit and subsequently refunded by Defendant. This relief is reasonable when weighed against the damages recoverable assuming Plaintiff was able to certify a litigation class and then prevail at trial on their claims. Accordingly, *Grinnell* factors (8) and (9) are likely to be satisfied.

## III.    THE COURT WILL LIKELY BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES.

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," the other half of the preliminary approval inquiry is whether the Court "will likely be able to . . . certify the class" for settlement purposes.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  As next addressed, both the Rule 23(a) factors are met, as are the relevant Rule 23(b) factors.

### A.    The Rule 23(a) Factors

#### 1. Numerosity.

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a). Joinder need not be impossible, only "merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). As confirmed

by Defendants' records, who has previously refunded all patients who paid the challenged

coinsurance amounts, there are 138,776 Class Members. Joinder of all of these individuals would

be impracticable.

### 2. Commonality.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2). Here, the Complaint asserted questions of law and fact common to the Class

which predominate over any questions affecting only individual Class members. Such common

questions include: a) whether Defendant violated N.Y. General Business Law § 349 and the

New Jersey CFA by allegedly deceptively concealing that their visits would be subject to any

applicable co-pays and deductibles; b) whether Defendant violated the parallel New York and

New Jersey laws knowingly or willfully; and c) whether Plaintiff and Class members have been

damaged to the extent they paid any portion of Summit Health CityMD's charges for co-pays or

deductibles.

### 3. Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts generally find

typicality in cases alleging manipulative conduct that affects all class members in the same

fashion. *See In re GSE Bonds*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ("typicality is met when

plaintiffs allege an antitrust price-fixing conspiracy because Plaintiffs must prove a conspiracy,

its effectuation, and damages therefrom--precisely what the absent class members must prove to

recover."). Here, Plaintiff alleges that the deceitful conduct was marketwide, and that CityMD

acted in a uniform manner in terms of billing for co-pays and co-insurance – claims which are

therefore, for certification purposes, typical of the Class Members' claims.

### 4. Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are no conflicts between the named Plaintiff and the Class Members, and the named Plaintiff's interest in proving liability and damages wholly aligns with the Settlement Class's interest. Both the named Plaintiff and the Class are entirely similarly situated in terms of the statutory claims being asserted here. Further, counsel for Plaintiff have extensive backgrounds, history, and records of success in representing consumers in complex litigation and class actions, particularly consumer class actions. *See* the Firm Resumes of Plaintiffs' counsel attached to the Lesser Dec. as Exhibit C. Accordingly, the requirements of both Rule 23(a)(4) and Rule 23(g) are satisfied.

### B.    The Rule 23(b) Factors Are Likely To Be Met.

The Rule 23(b)(3) factors are also likely to be met.  Each is addressed in turn.

### 1. Predominance.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)* at 623. Rule 23(b)(3) requires that common issues of law and fact predominate, but "predominance does not require a plaintiff to show that there are no individual issues." *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). Here, the common issue of whether Defendant violated N.Y. General Business Law § 349 and the New Jersey CFA by allegedly deceptively concealing that their visits would be subject to any applicable co-pays and deductibles will predominate over individual issues, if any; the common issue of whether Defendant violated the parallel New York and New Jersey laws knowingly or willfully will predominate over individual issues, if any; and the common issue of whether Plaintiff and Class

members have been damaged to the extent they paid any portion of Summit Health CityMD's charges for co-pays or deductibles will predominate over individual issues, if any.

### 2. Superiority.

Rule 23(b)(3)'s "superiority" requirement obliges a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court balances the advantages of class action treatment against alternative available methods of adjudication. See Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement is applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

Plaintiff submits that a class action is the superior method for the fair and efficient adjudication and settlement of this Action. Rule 23(b)(3)'s requirements are met because a class that will determine the issues common to all class members and fix compensation for alleged damages is far superior to numerous trials that would risk disparate results for similarly situated individuals. The prosecution of separate actions by thousands of individual Class Members would also impose heavy burdens upon the Court and would also create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class.

Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of conditional certification.

## IV.    THE PROPOSED NOTICE PLAN SATISFIES FED. R. CIV. P. 23(c)(2)(B)

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," which means "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(1)(B),

23(c)(2)(B). Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. Here, notice will be sent by a third-party administrator, American Legal Claim Services LLC (the "Settlement Administrator") by email and direct mail to every member of the Class.  American Legal Claim Services LLC is an experienced and able claims administrator with whom counsel has worked before, and from whom the Parties obtained a capped bid to handle the settlement administration of this case, which the Parties' counsel agree is a reasonable amount to administer this case. *See* Lesser Dec. ¶ 19.

After the provision of the Class List by Defendant to the Settlement Administrator, in accordance with Section 4.2.1 of the Settlement Agreement, the Settlement Administrator will run the Class List through appropriate email or physical address updating services (including the National Change Of Address ("NCOA") database), and then, within ten (10) business days of receipt of the Class List disseminate the Class Notice via email to all those Class Members for whom email addresses could be obtained or, to the extent that email dissemination of the Class Notice cannot be effected for any Class Member (such as because of lack of an email address), via U.S. mail, postage prepaid requesting either forwarding service or change service to the updated Class List. For up to forty-five days following the dissemination of the Class Notice, the Settlement Administrator will either re-email the Class Notice, if possible, or mail via standard U.S. Mail, postage prepaid, to updated email or physical addresses of the Class Members to the extent that

the Settlement Administrator received any email or physical address change notifications from the U.S. Postal Service or otherwise. No later than ten (10) business days before the final fairness hearing in this Litigation, the Settlement Administrator will provide proof of the dissemination of the Class Notice to Class Counsel for filing with the Court as part of a motion for final approval. Neither the Parties nor the Settlement Administrator will have any further obligation to send notice of the Settlement to the Class Members. Settlement Agreement ¶ 4.2.3.

In addition, the Settlement Administrator also will set up and maintain a Class website, and a call center. The Class Website will post important settlement documents, such as the Settlement Agreement, the Mail Notice, and the Preliminary Approval Order. The Class Website will also include a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the Final Approval Hearing is scheduled, when the Final Order and Judgment has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed. Settlement Agreement ¶ 4.2.3. Thus, the requirements of Fed. R. Civ. P. 23(e)(1)(B), 23(c)(2)(B) are met.

The Mail Notice is written in clear language and accurately describes the nature of the lawsuit, the Settlement, and the processes Class Members must follow either to exclude themselves from the Settlement or to opt-out. *Id.* at ¶¶ 4.2.3, 4.4.5 and Exhibit 2 thereto. All of the identified elements required by Fed. R. Civ. P. 23(c)(2)(B) are provided within the Notice and that Rule's requirements are thus met.

## **CONCLUSION**

For the above reasons, the Court should grant Plaintiff's Motion and enter the attached Order Preliminarily Approving Settlement and Directing Notice to Class.

Dated: June 29, 2023                          Respectfully submitted,
Rye Brook, New York

By: */s/ Seth R. Lesser*
Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
jak@klafterlesser.com

Janet Walsh
Francesca Iacovangelo
LOCKS LAW FIRM PLLC
622 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 838-3333
jwalsh@lockslaw.com
fiacovangelo@lockslaw.com

*Attorneys for Plaintiff and the Class*