UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                        :

ANA MARTINEZ REYES, individually and on  :
behalf of all others similarly situated,
                                                                                        :

                                            Plaintiff,          :            22-CV-9916 (VSB)

                - against -                    :            **OPINION & ORDER**

SUMMIT HEALTH MANAGEMENT, LLC,   :

                                          Defendant.  :
------------------------------------------------------------X

Appearances:

Seth Richard Lesser
Jeffrey A. Klafter
Klafter Lesser LLP
Rye Brook, New York

Janet Walsh
Francesca Iacovangelo
Locks Law Firm PLLC
New York, New York
*Counsel for Representative Plaintiff and the Proposed Class*

Andrew Bennett Kratenstein
Kierstin S. Fowler
McDermott Will & Emery LLP
New York, New York
*Counsel for Defendants*


VERNON S. BRODERICK, United States District Judge:

       This class action was filed on November 21, 2022, on behalf of all people who were allegedly inappropriately billed for an "office visit" after they received a COVID test from Summit Health Management, LLC d/b/a CityMD ("Summit Health"). (Doc. 1 ¶ 4.) This billing allegedly caused people to be inappropriately charged for services that should have been

provided for free.  (*Id.* ¶ 2–3.)  Before me is the unopposed motion filed by Plaintiff Ana Martinez Reyes ("Reyes") and her attorneys for preliminary approval of the Class Action Settlement (the "Settlement") with Defendant Summit Health (the "Approval Motion").  (Doc. 24.)  As part of this motion, the Parties have also submitted a proposed settlement agreement (the "Settlement Agreement," Doc. 25-1 Ex. A) to govern the Settlement.  Because I find after a preliminary evaluation that the settlement is fair, reasonable, and the result of good faith negotiation, Reyes's motion is GRANTED.

**I.      Background and Procedural History**

I adopt the factual and procedural background set out in the "Overview of the Litigation" section of the Approval Motion.  (Doc. 26 at 2–4.)  In brief, Reyes claims that Summit Health violated the Family First Coronavirus Response Act and the Coronavirus Aid, Relief, Economic Security Act by inappropriately charging those who came to its facilities for COVID tests.  (*Id.* 2.)  Reyes filed her complaint on November 21, 2022, alleging violations of New York General Business Law § 349(a)'s prohibition on deceptive business practices, (Doc. 1 ¶¶ 41–48), and unjust enrichment, (*id.* 49–54.)  The proposed class (the "Class") includes "all persons who obtained a COVID-19 Test at a CityMD facility during the class period defined below and have been billed for any part of CityMD's charge for an 'Office Visit' in connection with their Covid Test."  (*Id.* ¶ 32.)  Following an extended discovery period, (Doc. 26 at 3–4), the parties held a mediation session on May 31, 2023, that resulted in a settlement in principle.  (*Id*. 4.)

Reyes now asks that I (1) preliminarily approve the Settlement; (2) authorize the sending of the Parties' proposed settlement notice (the "Settlement Notice", Doc. 25-1 Ex. A Ex. 3); (3) appoint Class Counsel, a Class Representative, and a Settlement Administrator; and (4) establish

dates for the final approval of the Settlement, (Doc. 24.)  The notice required by 28 U.S.C. § 1715 was filed on July 21, 2023.  (Doc. 27.)

**II.     Legal Standards**

   **A.  *Preliminary Approval of the Settlement***

It is within a district court's discretion to approve proposed class action settlements.  *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014).  "The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, Newburg on Class Actions § 11:53, at 167 (4th ed. 2002)).  The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement.  Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing.  *See Silver v. 31 Great Jones Rest.*, No. 11-cv-7442, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013).  "[C]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).  However, "[e]ven at the preliminary approval stage, the Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'"  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)).  Thus, a district court must consider whether the court "will likely be able to: (i) approve

the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (same). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). In making this determination, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2) (A)–(D). In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable, and adequate based on the nine factors[1] established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[2] which partially overlap with the factors in Rule 23(e)(2)(C)–(D).

### B. *Conditional Settlement Class Certification and Appointment of Class Counsel*

Conditional settlement class certification and the appointment of class counsel have several practical purposes "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing." *Almonte v.*

---

[1] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

[2] The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace the "*Grinnell*" factors. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment, subdiv. (e)(2)).

*Marina Ice Cream Corp.*, No. 16-cv-00660, 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016). A proposed settlement class must meet the requirements of Rule 23(a) and (b)(3). Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)(4). "The party seeking class certification bears the burden of establishing each of these elements by a 'preponderance of the evidence.'" *Lizondro-Garcia*, 300 F.R.D. at 174 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). Once each of these four threshold requirements are met, "class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Id.* To certify a class under Rule 23(b)(3), as the parties seek to do here, a court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. Discussion

#### A. *Preliminary Approval of the Class Settlement*

Based one Reyes's submissions, including her memorandum of law, (Doc. 26), the declarations of Seth R. Lesser, (Doc. 25), and Andrew B. Kratenstein, (Doc. 28), the Settlement Agreement, and other supporting materials, I find that the Settlement merits preliminary approval.

### 1. Adequacy of Representation

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted). Reyes's interests are aligned with those of the class given that she suffered the same purported harms as the other class members. She was allegedly improperly charged for an "office visit" after she received a COVID test, and then repeatedly harassed as Summit Health attempted to collect on that erroneous charge. (Doc. 1 ¶¶ 24–26, 30.) These harms align with those suffered by the class of "[a]ll persons who paid CityMD bills up to and including December 1, 2022, for a Covid test that was conducted at a CityMD facility located in either New York or New Jersey." (Doc. 25-1 at 37.)

Reyes's counsel has demonstrated the necessary qualifications and skill in this matter through their prior results and experience, (Doc. 25-3), and their work on this case, which involved substantial discovery, (Doc. 25 ¶¶ 6-7), and resulted in a successful mediated settlement, (*Id.* ¶ 11). Therefore, Rule 23(e)(2)(A)'s adequacy of representation prong weighs in favor of approval.

### 2. Existence of Arm's-Length Negotiations

The existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis. Rule 23(e)(2)(b) requires a court to consider whether a proposed settlement "was negotiated at arm's length." The Settlement fulfills this criterion.[3]

---

[3] Previously, settlements negotiated at arm's length enjoyed a presumption of fairness. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000). However, the Second Circuit has since clarified that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

There was extensive pre-negotiation discovery, including Reyes's pre-filing investigation, and then seven months of discovery between the Parties (*i.e.,* from roughly November 2022 to April 2023), that included a review of Summit Health's internal communications and correspondence with insurance companies.  (Doc. 25 ¶¶ 6–7.)  Given this discovery, the Parties had a full opportunity to acquaint themselves with the strength of the case prior to initiating negotiations.  The Parties were represented by experienced counsel who were then aided in their negotiations by an experienced mediator.  (*Id.* ¶ 10.)  This culminated in an agreement in principle after a day-long mediation followed by further negotiations to draft the Settlement Agreement.  All of this suggests that the Settlement is the result of good faith arm's-length negotiations.

### 3. Adequacy of Relief

In assessing the adequacy of a settlement under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results."  *In re Payment Card*, 330 F.R.D. at 36 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  This inquiry overlaps with the *Grinnell* factors of "complexity, expense, and likely duration of the litigation" along with "the risks of establishing liability," "the risks of establishing damages" and "the risks of maintaining a class through the trial."  *See Grinnell*, 495 F.2d at 463.

Reyes faced significant litigation risks.  (Doc. 26 at 11.)  Damages under N.Y. Gen. Bus. Law § 349(h) are limited to the greater of $50 dollars or actual damages of up to $1,000 unless a litigant can prove that the violation of this section was willful or knowing.  N.Y. Gen. Bus. Law § 349(h); *see also ABC Rug & Carpet Cleaning Serv. v. ABC Rug Cleaners, Inc.*, No. 08-cv-5737, 2010 WL 11591630, at *3 (S.D.N.Y. Dec. 20, 2010).[4]  Give the uncertain regulatory

---

[4] The class complaint also implicates New Jersey's consumer fraud laws, (Doc. 26 at 2), which similarly provide for treble damages, *see* N.J. Stat. Ann. § 56:8-19.  However, unlike N.Y. Gen. Bus. Law § 349(h), New Jersey's statute

environment governing payments and reimbursements for COVID-related medical services, and the Parties' extensive discovery, demonstrating the state of mind necessary to obtain treble damages may have been challenging and the subject of extensive appeals.  (*See* Doc. 26 at 11 (discussing the challenges associated with litigating this case and the substantial trial and appellate risks).)  These considerations weigh in favor of preliminary approval.

Under Rule 23(e)(2)(c)(ii), a court must evaluate the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(c)(ii).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Lea v. Tal Educ. Grp.*, No. 18-cv-5480, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (internal quotation marks omitted).  "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal quotation marks omitted).

The distribution plan here has been formulated by experienced counsel, *see* § III.A.1 *supra*, and is being overseen by American Legal Claim Services LLC, an experienced claims administrator, (Doc. 25 ¶ 19).  The proposed method of distributing relief provides for either an automatic electronic payment or a mailed check to each Class member based on information about the Class members already known by the Parties or provided by Class members during the process of notifying class members about the Settlement.  (Doc. 25-1 § 5.2.2.)  Distribution of

---

"does not provide for recovery of statutory damages where a plaintiff cannot show actual harm." *Patel v. Venerable Ins. Andannuity Co.*, No. 22-cv-3226, 2021 WL 3828832, at *5 (D.N.J. Aug. 26, 2021) (internal quotation marks omitted).  As the statutory recovery under N.J. Stat. Ann. § 56:8-19 will always be equal to or lower than under N.Y. Gen. Bus. Law § 349(h), and there is no difference in recovery across Class members, I need not consider recovery under this N.J. Stat. Ann. § 56:8-19 separately.

8

funds will thus be automatic, with no need for additional effort on the part of Class members. (Doc. 26 at 11–12.) There is thus no risk that this process, formulated by experienced counsel, will be unduly demanding or unable to filter out unjustified claims. Therefore, I find that this plan is fair, reasonable, and adequate.

In assessing the adequacy of the relief, Rule 23 also requires the court to examine the proposed attorneys' fees. Fed. R. Civ. P. 23(e)(2)(c)(iii). Here, the requested attorneys' fees are limited to no more than one-third of the total settlement amount, or approximately $540,000. (Doc. 25 ¶ 12.3.) This appears reasonable. "Courts in this District have approved fees as high as 33.5% from comparable class settlement funds, finding that they are 'well within the applicable range of reasonable percentage fund awards.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695 (quoting *In re DDAPV Direct Purchaser Antitrust Litigation*, No. 05-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) (awarding 33.5% from a class settlement fund of $20.25 million)); *see also In re Oxycontin Antitrust Litig.*, No. 04-md-1603, ECF No. 360 (S.D.N.Y. Jan. 25, 2011) (awarding 33.5% from a class settlement fund of $16 million). However, before attorneys' fees can be finally approved, additional materials will need to be submitted and examined, such as attorneys' affidavits and billing records.

However, I am somewhat concerned with the proposal to pay unclaimed sums to Summit Medical Group Foundation, Inc. d/b/a Summit Health Cares ("Summit Health Cares") pursuant to the *cy pres* doctrine. (Settlement Agreement, § 5.2.2.) "In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds. In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 (2d Cir. 2005). The

permissibility of distributions pursuant to *cy pres* principles is well-established so long as class members benefit, even if indirectly, from the distribution. *Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022).

However, courts have increasingly noted concern with a doctrine that invests courts and litigants with a highly discretionary ability to control the allocation of large sums of money to the possible detriment of class members. *See In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1063 (8th Cir. 2015) ("[M]any of our sister circuits have criticized and severely restricted the practice [of making *cy pres* distributions]") (collecting cases); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 480 (5th Cir. 2011) (Jones, J., concurring) ("The opportunities for abuse [of *cy pres*] have been repeatedly noted."); *Marek v. Lane*, 571 U.S. 1003 (2013) (Roberts, C.J., concurring) (suggesting there is a need to "address more fundamental concerns surrounding the use of such [*cy pres*] remedies in class action litigation").

The proposed *cy pres* recipient here, Summit Health Cares, bears a similar name to Defendant Summit Health. The Parties' papers do not indicate, what, if any connection, exists between the two entities, but given courts' increasing concern with the potential for abuse inherent in *cy pres* distributions, I expect the Parties' motion for final approval of the Settlement to address this question in greater detail and explain why the use of the *cy pres* here is appropriate and why Summit Health Cares is an appropriate recipient of unclaimed funds. At this stage, however, I do not find this is reason enough to delay notice to the class or the settlement approval process. I therefore find on a preliminarily basis that the proposed settlement provides adequate relief to the Class.

Finally, a court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(c)(iv), which includes "any agreement made in connection

with the proposal," Fed. R. Civ. P. 23(e)(3). The only prior agreement here is a term sheet negotiated by the parties after their mediation session. This has since been superseded by the Settlement Agreement. (Doc. 26 at 13.) Absent any agreements impacting the Settlement, this consideration does not weigh against preliminary approval. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696 ("The Court has reviewed . . . [a separate] agreement [made in the case] and finds that it has no bearing on the preliminary approval analysis.").

### 4. Equitableness of Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement provides that each Class member will receive a minimum of $5.00, and a *pro rata* sum based on the amounts of the charges refunded to them by Summit Heath. (Doc. 25-1 at 10.) This *pro rata* distribution is sufficient evidence of equitable treatment. *See In re Payment Card,* 330 F.R.D. at 47 (finding that a "pro rata distribution scheme is sufficiently equitable").

As part of this factor, I must also consider the incentive payments proposed in the Settlement. "Rule 23(e)(2)(D) does not forbid incentive awards." *Moses*, 79 F.4th at 245. "At the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* Parties have proposed a $9,000 service award for Reyes. (Doc. 25-1 § 5.2.1.) This award is within the range of service awards regularly approved by courts in this District given counsel's representation regarding her contributions to this case.[5] However, following the parties'

---

[5] Courts in this District have regularly approved service awards for individual representative plaintiffs ranging from $1,000 to $10,000. *See, e.g.*, *Johnson v. Body & Pole, Inc.*, No. 22-cv-00857, 2023 WL 3647368, at *2 (S.D.N.Y. May 25, 2023) (approving a $1,000 service award for each named plaintiff); *Hezi v. Celsius Holdings, Inc.*, No. 21-cv-09892, 2023 WL 2786820, at *6 (S.D.N.Y. Apr. 5, 2023) (approving service awards of $5,000 and $10,000); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 12-cv-1025, 2023 WL 2663479, at *4 (S.D.N.Y. Mar. 28, 2023) (approving $2,500 service awards); *Santos v. Nuve Miguel Corp.*, No. 21-cv-1335, 2023 WL 2263207, at *3 (S.D.N.Y. Feb. 28, 2023) (approving a $10,000 service award); *Aguirre v. Hello Prod., LLC*, No. 19-cv-09577-

11

briefing, the Court of Appeals issued *Moses*, which directed "courts evaluating the substantive fairness of a settlement . . . [to] ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." 79 F.4th at 245. Given that Reyes's proposed service award is within the range regularly approved by courts in this District, I do not find reason to delay preliminary approval based on her service award. However, as with the *cy pres* issue identified in § III.A.3 *supra*, I expect any motion for final approval of the settlement to address the impact of *Moses*, if any, on the service award proposed for Reyes and the implications of that award for equitable treatment across class members.

### 5. Remaining *Grinnell* Factors

The *Grinnell* factors not expressly assessed under Rule 23(e)(2)(C)(i) include "[] the reaction of the class to the settlement; [] the stage of the proceedings and the amount of discovery completed; . . . [] the ability of the defendants to withstand a greater judgment; [] the range of reasonableness of the settlement fund in light of the best possible recovery; and [] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

All five of these *Grinnell* factors favor preliminary approval. First, Reyes favors the Settlement, and her approval is probative of the Class's reaction at this time since notice has not yet been issued. *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-cv-3538 (VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since

---

SDA, 2023 WL 145614, at *4 (S.D.N.Y. Jan. 10, 2023) (approving $3,500 service awards); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 20-cv-02667, 2023 WL 123201, at *3 (S.D.N.Y. Jan. 5, 2023) (approving $2,500 service awards). Other courts have suggested an even broader range of $2,500 to $85,000. *Hart v. BHH, LLC*, No. 15-cv-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) ("Awards on an individualized basis have generally ranged from $2,500 to $85,000.") Here, it is sufficient to note that the proposed award for Reyes is within either range.

12

notice has not yet been issued.")  Second, Reyes has "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [her] claims and the adequacy of the settlement," *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006), given, as previously noted, the volume of pre-settlement discovery exchanged.

Third, despite the fact that Summit Health could potentially withstand a greater judgment, this fact "does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal quotation marks omitted).  Finally, in considering the Settlement in light of the best possible recovery and the risks of litigation, the Settlement provides adequate recovery for the Class.  After the initiation of this case, Defendant decided to refund all the tests that were allegedly billed improperly.  (Doc. 25 ¶ 4.)  Additionally, class members will still receive a minimum of $5.00, and a *pro rata* share of the remaining funds provided for in the Settlement.  (Doc. 25-1 § 4.3.1.)  Given the litigation risks already discussed in § III.A.3, this is a reasonable and adequate settlement.

### B. *Conditional Certification of Class*

Reyes has met the requirements for a class set out by Rule 23(a)(1)–(4).  The Class is sufficiently numerous because it consists of 138,776 members.  (Doc. 25-1 § 4.2.1.)  Common issues predominate across the Class because their harms stem from the same alleged improper charges for COVID tests administered at CityMD and involve the same New York or New Jersey legal regime.  Reyes's claims are typical of the class because her claims, like all Class members, arise out of these factual and legal circumstances.  The adequacy requirements are met both because Reyes's interests are not antagonistic to those of the class and because, as discussed above, her attorneys have sufficient skill and experience to competently represent the Class and

have achieved a sound result.  Because the class certification request is made in the context of settlement only, I need not address the issue of manageability.  *See Soler v. Fresh Direct, LLC*, No. 20-cv-3431, 2023 WL 2492977, at *6 (S.D.N.Y. Mar. 14, 2023).

Furthermore, the predominance and superiority requirements of Rule 23(b)(3) are satisfied because the common legal and factual issues already discussed "predominate over any questions affecting only individual members" and a class action is a superior method of resolving these issues. Fed. R.  Civ. P. 23(b)(3).  Accordingly, pursuant to Rules 23(a), (b)(3), and (e), I certify the following Class for the purposes of settlement, notice and award distribution only:

> All persons who paid CityMD bills up to and including December 1, 2022 for a Covid test that was conducted at a CityMD facility located in either New York or New Jersey.

Additionally, I hereby preliminarily appoint Reyes as Class Representative, Seth R. Lesser and Jeffrey A. Klafter of Klafter Lesser LLP and Janet Walsh and Francesca Iacovangelo of Locks Law Firm PLLC as Class Counsel, and American Legal Claim Services LLC as Settlement Administrator.

If the Settlement Agreement is not finally approved, is not upheld on appeal, or is otherwise terminated for any reason before all possible appellate rights with respect to any final order and judgement granting the Settlement Agreement have expired, Defendant may seek to decertify the Class.  In that case the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection with it, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed.

Finally, I find that the materials submitted by the Parties at Docs. 27 and 28 satisfy the notice requirements imposed by 28 U.S.C. § 1715.

### C. *Approval of Notice to the Class, Settlement Administrator, and Escrow Agent*

Rule 23(c)(2)(B) requires that:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

I have reviewed the proposed plan for providing notice to the Class, which involves distributing a class notice through a combination of email outreach and first-class mail based on a distribution list provided by Defendant. (Doc. 25-1 Ex. A § 4.2.3.) Email notice will provide the class member with the Settlement Notice, while mail notice will consist of a postcard with an internet address that will provide access to the Settlement Notice. (*Id.* Ex. A § 4.2.3.) The Settlement Notice explains the nature of the action and summarizes the claims and issues, (*id.* Ex. A Ex. 3 at 3), defines the class, (*id.* at 4), indicates that a Class member may object or enter an appearance through an attorney, (*id.* at 6–7), explains how exclusion works and the process for opting out of the settlement, (*id.* at 5), and explains the binding nature of the action, (*id.* at 5).

For up to 45 days after this initial dissemination, the Settlement Administrator will re-mail or email notices based on any change of address information received. (*Id.*) At least ten days before the final fairness hearing, the Settlement Administrator will provide Class Counsel with proof that notice to the Class has been disseminated in accordance with this plan. (*Id.*)

15

This proposed notice plan is the best notice practicable under the circumstances and meets the requirements of due process. The plan also satisfies all seven elements under Rule 23(c)(2)(B). The Parties shall therefore implement this plan as set out in this Opinion & Order and as otherwise provided for in § 4.2 of the Settlement Agreement.

### D. *Opt-Out and Objection Procedures*

If a Class member chooses to opt-out of the Settlement, that Class member is required to submit a request for exclusion to the Settlement Administrator, post-marked or sent by an overnight mail or courier service on or before the date specified in the Settlement Notice, which shall be sent to the Settlement Administrator and postmarked no later than 30 days before the Final Approval Hearing scheduled in III.E of this Opinion & Order. A Class member who submits a request for exclusion using the procedure identified above shall be excluded from the Class if the Settlement Agreement is approved as part of a final judgment and all possible appellate rights with respect to the final order and judgement granting the Settlement Agreement expire. The Settlement Administrator and Class Counsel shall effectuate the filing of the list of validly executed opt outs pursuant to § 4.4.5.2 of the Settlement Agreement. A Class member who does not file timely a request for exclusion from the Settlement or otherwise does not follow the procedure described in the Settlement Agreement and this Opinion & Order requesting exclusion shall be bound by all subsequent proceedings, orders, and judgments in this action.

Any Class member who wishes to be heard at the Final Approval Hearing, or who wishes for any objection to be considered, must file a written notice of objection on or before the date specified in the Settlement Notice, which shall be no later than 60 days after the initial mailing of the Settlement Notice. The objection must include the following: (1) the Class member's full name, address, and current telephone number; (2) all objections and the basis for any such

16

objections stated with specificity; (3) if the individual is represented by counsel, the name and telephone number of his or her counsel; (4) if the objector intends to appear at the Final Approval Hearing, either with or without counsel, the objection must so state; and (5) if so (a) the identity of any witnesses the objector may call to testify; (b) a listing of all exhibits the objector intends to introduce into evidence at the Final Approval Hearing, if any, as well as true and correct copies of such exhibits.  Any Class member who fails to timely file and serve a written objection pursuant to procedures for objecting set out in this Opinion & Order shall not be permitted to object to the approval of the Settlement or the Settlement Agreement, unless otherwise ordered by the Court, and shall be foreclosed from seeking any review of the settlement or the terms of the Settlement Agreement by appeal or other means.

### E.  *Schedule of Events*

I adopt Reyes's proposed schedule for the resolution of this action in full as set out below.

| Event | Deadline |
|---|---|
| Deadline for Defendant to provide the Settlement Administrator with the list of Class members for notice purposes pursuant to § 4.2.1 of the Settlement Agreement. | Within 10 business days of entry of this Opinion & Order. |
| Deadline for mailing of settlement notice by the Settlement Administrator pursuant to § 4.2.3 of the Settlement Agreement. | Within 10 business days after receipt of the list of Class members from Defendant. |
| Deadline for Class members to submit written objections to the Settlement. | Within 45 calendar days after the date of initial mailing of the Settlement Notice.  Any objection must comply with the requirements set forth in § III.D of this Opinion & Order. |
| Deadline for Class members to opt-out of the Settlement. | No later than 30 days before Final Approval Hearing.  Any opt-out request by a Class member must comply with the requirements set forth in § III.D of this Opinion & Order. |

| Deadline for Plaintiff, with Defendant's review and approval, to file a motion for final approval of the settlement, Class Counsel's application for fees, costs and expenses, the Class Representative's application for a service award, the list of opt outs from the Settlement required by § 4.4.5.2 of the Settlement Agreement and the list of all persons who have timely objected to the settlement and all documents relating to the objections. | At least 10 business days prior to the Final Approval Hearing. |
|---|---|
| Hearing to consider Plaintiff's application for final approval of the class settlement ("Final Approval Hearing"). | May 7, 2024 |

### IV.    Conclusion

For the foregoing reasons, Reyes's unopposed motion for preliminary approval of the settlement is GRANTED on the terms set out in this Opinion & Order. This includes the terms and conditions set forth in the Settlement Agreement identified in this Opinion & Order. Accordingly, it is hereby:

ORDERED that, pending the Final Approval Hearing, all deadlines in this action save those set out in this Opinion & Order for the purpose of executing the Settlement are stayed.

IT IS FURTHER ORDERED that I shall retain jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement.

The Clerk of Court is respectfully directed to close the motion at Doc. 24.

SO ORDERED.

Dated: February 6, 2024
      New York, New York

Vernon S. Broderick
United States District Judge