UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANA MARTINEZ REYES,                                  Case No. 22-cv-09916
individually and on behalf of
all others similarly situated,

               Plaintiffs,

      -against-

SUMMIT HEALTH MANAGEMENT, LLC,

               Defendant.
------------------------------------------------------------x

**DECLARATION OF SETH R. LESSER IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, FOR AWARD OF ATTORNEYS'
FEES AND EXPENSES, FOR APPROVAL OF SERVICE PAYMENTS
TO THE CLASS REPRESENTATIVES AND FOR PAYMENT OF THE
<u>CLAIMS ADMINISTRATOR'S COSTS AND EXPENSES</u>**

SETH R. LESSER, an attorney admitted to the bar of this Court, declares, under penalty of perjury that:

1. I am a partner in Klafter Lesser LLP, and counsel for named Plaintiff Ana Martinez Reyes and the proposed Settlement Class (collectively "Plaintiffs"). I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, for Award of Attorneys' Fees and Expenses and for Approval of Service Payments to the Class Representatives.

**<u>Procedural History of the Case</u>**.

2. The procedural history of the case was previously set for in my declaration in support of preliminary approval and needs not be repeated here. *See* ECF No. 26 at 2-4. Since that submission, this Court granted Plaintiff's motion preliminarily approving settlement and

1

directing notice to the Class and setting the date for the fairness hearing. ECF No. 31 ("Preliminary Approval Order").

**Summary of the Settlement, The Notice That Was Sent, And The Class's Reaction.**

3. As previously set forth, Plaintiff believes that the recovery here is an excellent result. Class members have already been refunded by CityMD for the amount of Office Visits that were charged, and will each receive at least $5.00 constituting the additional damages they might have been able to assert under New York and New Jersey's consumer protection laws, with the final amount to be determined pro rata, based on the amount each Class member was refunded. The recovery number here, to be paid directly to the Class without the need for a claim form, is, Class Counsel submits, undoubtedly a fair, reasonable, and adequate result, particularly where the Class members have been already repaid 100% of their actual potential damages. Further, as Plaintiffs' Counsel, I can further unequivocally state – and believe this cannot be gainsaid – that the proposed Settlement is the product of two fully informed sides negotiating intensely at arm's length.

4. Since preliminary approval and with the Parties' aid, (1) the required CAFA notice was effectuated by Defendant (*see* ECF Nos. 27 & 28), and (2) the Court-appointed Settlement Administrator, American Legal Claim Services, has provided the notice to the Class pursuant to the Court's Preliminary Approval Order, established the settlement website, and has fielded responses of the Class members. American Legal Services will continue to perform these duties and those outlined in the Settlement Agreement going forward, in the event of approval, including continuing to handle inquiries from the Class Members, determining the proper payment to, and providing payment to, the Class Members. The specifics of what American Legal Claim did are set forth in the declaration of Noah Fiori which is attached as Exhibit 1 hereto.

5.      The response of the Class Members further confirms, we believe, that the Settlement reached between the parties is fair, reasonable, and appreciated by the affected consumers: 123,667 Class Members have been appropriately notified, with 99.54% (123,106) via email or first class mail, and not a single member filed an objection to any part of the Settlement. There were only four-opt outs.  The overall response from the Class is thus in support of approval of the Settlement, which will provide a recovery of a minimum of $5.00 directly paid to each Class Member, none of whom had to submit a claim form.  There cannot be any fair dispute that the Settlement was not the result of a contested litigation and an arms-length mediation between skilled and competent counsel. In sum, the Settlement provides the settlement Class Members with relief warranting approval.

6.      The Settlement Agreement also provides that, in the event that there are uncashed checks or undelivered electronic payments following the distribution of the settlement checks, and no further update of addresses can be addressed by a Level 1 trace by the Claims Administrator or a resubmission of an electronic payment does not succeed, any remaining amounts would be sent to a *cy pres* recipient.  Inasmuch as in Preliminary Approval Order, the Court questioned the of the previously agreed-upon recipient, Summit Health Care, Plaintiff has asked Summit to reconsider Summit Health Care, and the Parties have now agreed that the *cy pres* recipient of any uncashed/ undelivered settlement funds should be Epidemics Fund of The Fund for Public Health NYC.  See Exhibit 2 hereto (Addendum to Settlement Agreement). The Fund for Public Health NYC is a well-respected independent non-profit created in 2002 that partners with the New York City Health Department to connect the Health Department with private sector entities and non-profits to address health needs.  Indeed, it has raised in the past two decades over a half a billion dollars of funding.  *See* https://fphnyc.org/about/our-story/.

Of particular applicability here, its primary present work and "priority" missions are "Fighting Epidemics," Mother/baby health projects, as well as mental health and substance abuse; and it has, as noted, an Epidemics Fund. See https://fphnyc.org; https://fphnyc.org/work/; *see also* https://fphnyc.org/work/fighting-epidemics/ (webpage specifically highlight work ensuring equitable distribution and uptake of Covid-19 vaccines as well as other epidemic-related undertakings, such as "widespread conditions or behaviors, such as opioid use."). The Parties believe that it, accordingly, represents a proper cy pres recipient for this case involving the COVD-19 epidemic and the charging of virus tests.

7. As for the *cy pres* itself, the Settlement Agreement' provides for the payment to Class Members in a manner that minimizes the risk of uncashed checks: in Class Members, who were easily identified through Defendant's records, will receive compensation without the need to complete a claims form, and addresses for returned checks will be rechecked through a Level 1 skip trace and for resubmission of electronic payments. While, invariably, there will still be some funds that cannot be paid to Class Members, it will likely be of a relatively small value.

8. Since this is a settlement providing for individual distributions, and redistribution would be impractical given the size of the Class, a *cy pres* recipient here is proper and recognized as best practices by scholars and courts, as captured by the often-cited National Association of Consumer Advocates *Standards and Guidelines For Litigating And Settling Consumer Class Actions (Fourth Edition),* attached herein as Exhibit 3, as well as other authorities.

**The Requested Awards Should Be Granted**

9. Class Counsel is petitioning an award of $600,000 in fees, representing one third of the Settlement fund: an amount we believe to be fair and proper given that we undertook to prosecute this action without any assurance of payment, litigating this case on a wholly

contingent basis in the face of tremendous risk, and given the results obtained, as set forth in our memorandum in support of final approval. A percentage of the fund fee request is consistent in aligning our interest in obtaining the maximum recovery for the Class members with our own interests. *See* Final Approval Memorandum at 11.

10. In addition, (1) the individual retainer for Ms. Reyes provided for a one-third contingency; and (2) the one-third figure was also set forth in the forms of the Notice to the Class, which stated that "Class Counsel will request $8,000 to repay them for the costs and expenses they incurred in litigating this lawsuit and $600,000 as fees for their work and effort." Not a single objection was received to the one-third figure, which we believe makes the requested one-third fee further reasonable.

11. Further in respect to the fee request, my firm's total number of hours spent on this litigation as of this week has been 340.08 hours, for a lodestar of $240,241.00. In turn, the time spent by Locks Law Firm has been 49.55 hours, for a lodestar of $44,021.00. Together, accordingly, the two Class Counsel firms spent a total of 389.63 hours and incurred a lodestar of $284,262.00. The hours reported are reasonable for a case of this complexity and magnitude and length and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Copies of those time records are attached as Exhibits 4 (KL) and 5 (LLF) hereto.

12. As to the hourly rates, we would note that these are rates that we charge paying clients for our services and are rates that we believe reflect the knowledge, experience and reputation of our firms. Expense items are billed separately, and such charges are not duplicated in the firms' billing rates.

13. The hours, Class Counsel submits, are reasonable, particularly in light of the efficient manner in which the litigation was undertaken, with a recognition that counsel on both sides were experienced, capable, and well-versed with the facts of this complex dispute. With the Parties' agreement to get to the heart of the claims without unnecessary motion practice, formal discovery or the like, the parties were able to pursue independent mediation in May 2023, just six months after the case was initially filed, and with the Parties in full knowledge of the facts and circumstances of the case as well as the likely defenses that Defendant was to put forward, as has been previously discussed at ¶¶ 5-8 of my declaration in support of preliminary approval.

14. Moreover, the requested fee is intended to compensate Class Counsel not only for time and effort already expended, but also for the additional time that will be required to administer the Settlement in the future. In our experience, administering class settlements of this nature and size requires ongoing commitment. For example, Class Members have already had questions regarding the Settlement, and, based upon experience, such calls will continue through and beyond final approval as Class Members report lost checks and request new ones, raise questions about tax consequences and generally call for advice. There will, in addition, also be time spent overseeing the finalization of the claims process through American Legal Service. It can fairly be estimated that this time will add at least another 40 to 60 hours of time for the lawyers and staffs of our firm, which time is, of course, not yet reflected in the time and lodestar figures set forth above.

15. Class Counsel also requests a cost and expense award of $7,546.07 in connection with the prosecution of this litigation. The expenses incurred in this case to date total $7,546.07 and are reflected in the books and records of the two firms and constituted the costs of litigating

this case, including costs attendant upon bringing the case, mediation, telephone charges, postage, transportation, photocopies, electronic research, and similar charges. Any and all of the time and expense records are available for the Court's inspection, should it so require. Class Counsel will also incur, it should be noted, incidental costs and expenses as may accrue prior to the finalization of the Settlement. This amount is slightly less than what was agreed-upon in the Settlement agreement, which was $8.000,00, and which was the amount specifically set forth in the Settlement Notice and to which no Class member objected.

16. My firm incurred a total of $7,546.07 in unreimbursed costs and expenses in connection with the prosecution of this litigation, as follows:

| | |
|---|---|
| Court Fees: | 616.00 |
| Subpoena Service: | 569.27 |
| Mediation: | 5000.00 |
| FedEx/Postage: | 72.96 |
| Telephone/Internet: | 13.13 |
| Transportation/Meals: | 65.16 |
| Case Research / Lexis | 1168.05 |
| Pacer | 41.50 |
| TOTAL | **7,546.07** |

17. The Settlement Administrator, American Legal Services LLC, has provided notice as directed by the Court. It has incurred notice costs of approximately $78,534 although, as noted, $50,000 of the total costs for American Legal Services will be paid directly to it by Defendant. It expects completion of the administration and distribution process for this case to

7

cost an additional amount of $109,154.00 which Plaintiff is rounding up to $140,000 for the expense award request by the present motion.   Based on our experience, the amount being charged by American Legal Services to handle this notice and administration of a Class of large size, as is this one, is reasonable.

18.     Plaintiffs also request service payment of $9,000 to named Plaintiff and settlement Class Representative Ana Martinez Reyes, which, as acknowledged by the Court is "within the range of service awards regularly approved by courts in this District given counsel' representation regarding her contributions to this case." Preliminary Approval Order (at 10-11).

19.     The service award requested, which is reasonable given the significant contributions of Ms. Reyes to advance the resolution of the lawsuit, was agreed upon by the parties in the Settlement Agreement, and it was set out in the Notice, receiving no objection by any Class Members. While the amount may appear substantially more than any Class Member, service payments are generally awarded by courts to encourage individuals to be willing to step forward to file a lawsuit that may aid many others, particularly, where the individual wrongs may be small, such as is the case here.  It is thanks to Ms. Reyes's efforts, from the day she realized she had a claim, to her availability thereafter to discuss the possibly commencement of the case and review of the complaint and her having made herself available at every step of the way that led to the Settlement, and her willingness to stand up that resulted in a settlement that will benefit over 120,000 individuals.  Accordingly, a service award of $9,000 for this effort is warranted.  It is, I would further note, less than one I typically request (and obtain) for class representatives in consumer class actions because she did not have to respond to formal discovery; indeed, $9,000 is approximately the same amount I would have requested for such a plaintiff – who stepped forward to file a federal court class action on behalf of disparate consumers – twenty-five years

ago when I began doing such cases which, given the reality of inflation, makes it, I believe, yet further reasonable.

Dated: April 23, 2024

_____
Seth R. Lesser