UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANA MARTINEZ REYES,
individually and on behalf of all others
similarly situated,

                Plaintiff,

-against-                     Case No. 22-cv-09916

SUMMIT HEALTH MANAGEMENT, LLC,

                Defendant.
----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

Seth R. Lesser
Jeffrey A. Klafter
Jessica Rado
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Janet Walsh
Francesca Iacovangelo
LOCKS LAW FIRM PLLC
622 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 838-3333

Attorneys for Plaintiff and the
Settlement Class

# TABLE OF CONTENTS

I.    Introduction ...................................................................................................................1

II.    Procedural History & Background .........................................................................2

III.    Summary of Settlement Terms, The Notice That Was Sent, And The Class's Reaction ....2

    A.    Summary of the Settlement and Parties' Proposed Change to the Cy Pres Recipient...2

    B.    The Notice That Was Sent, And The Class's Reaction .................................................6

ARGUMENT ....................................................................................................................7

IV.    The Settlement Should Be Approved Under Fed. R. Civ. P. 23(e)(2) And *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ............................................................7

V.    The Settlement Class Should Be Finally Approved for Settlement Purposes ......................9

VI.    Class Counsels' Request for Attorneys' Fees, Costs, and for Service Payments to the Class Representatives are Reasonable and Should be Approved ....................................................9

    A.    The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in Class Action Settlements ..................................................................9

    B.    Plaintiffs' Request for Attorneys' Fees is Reasonable .................................................12

        1.    Class Counsel Have Expended Significant Time and Labor ................................12

        2.    The Magnitude and Complexity of the Litigation ................................................13

        3.    The Risk of Litigation .........................................................................................14

        4.    Class Members are Represented by Experienced Class Counsel ........................14

        5.    The Requested Fee Is Reasonable In Relation To The Settlement .....................15

        6.    Public Policy Considerations Favor the Fee Requested ......................................15

    C.    The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund .......................................................................................16

    D.    The Court Should Approve Payment of Costs and the Settlement Expenses ...........18

    E.    Service Awards to the Class Representatives Should be Approved ............................19

CONCLUSION ...............................................................................................................21

i

Table of Authorities

*Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*,
   12 So. 3d 850 (Fla. 3rd DCA 2009) ......................................................... 21

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................. 13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................... 9, 10

*Butt v. Megabus Ne. LLC*,
   2012 U.S. Dist. LEXIS 137683 (S.D.N.Y. Sep. 25, 2012) ......................... 19

*Chambery v. Tuxedo Junction Inc.*,
   2014 U.S. Dist. LEXIS 101939 (W.D.N.Y. July 25, 2014) ......................... 18

*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ......................................................................... 11, 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................... 7

*City of Providence v. Aeropostale, Inc.*,
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ............................. 10

*Clark v. Ecolab Inc.*,
   2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ........................... 19

*Cohan v. Columbia Sussex Mgmt., LLC*,
   2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018) ................... 17,18

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................... 8

*Ersler v. Toshiba Am., Inc.*,
   2009 U.S. Dist. LEXIS 14374 (E.D.N.Y. Feb. 24, 2009) ............................ 9

*Escobar v. Pret A Manger (USA) Ltd.*,
   U.S. Dist. LEXIS 234799 (S.D.N.Y. Feb. 19, 2019) .................................. 8

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) ................................................................. 17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................... *passim*

*Grottano v. City of N.Y.*,
  2021 U.S. Dist. LEXIS 227995 (S.D.N.Y. Nov. 29, 2021) ........................................ 8

*Hart v. BHH, LLC*,
  2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ........................................ 19

*Hesse v. Godiva Chocolatier*,
  2022 US Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ........................................ 16

*In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) ........................................ 18

*In re N. Dynasty Mineral Ltd. Sec. Litig.*,
  2023 U.S. Dist. LEXIS 149613 (E.D.N.Y. Aug. 24, 2023) ........................................ 11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ........................................ 17

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996) ........................................ 13

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y 1999) ........................................ 15

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................ 17

*Jones v. National Distillers*,
  56 F. Supp. 2d 355 (S.D.N.Y. 1999) ........................................ 6

*Knox v. John Varvatos Enters.*,
  520 F. Supp. 3d 331 (S.D.N.Y. 2021) ........................................ 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................ 8

*Marshall v. Deutsche Post DHL*,
  2015 U.S Dist. LEXIS 125869 (E.D.N.Y. Sept. 21, 2015) ........................................ 18

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ........................................ 10

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ........................................ 11

*Mills v. Capital One*,
  2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sep. 30, 2015) ........................................ 20

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ........................................ 19

*Parker v. Jekyll & Hyde Entm't Holdings, LLC,*
    2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) .......................................................... 20

*Plotz v. NYAT Maintenance Corp.,*
    2006 U.S. Dist. LEXIS 4799 (S.D.N.Y. Feb. 6, 2006) ................................................................ 6

*Rodriguez v. W. Publ'g Corp.,*
    563 F3d 948 (9th Cir 2009) ...................................................................................................... 21

*Rosenfeld v. Lenich,*
    2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 4, 2021) ........................................................... 16

*Solis v. Orthonet LLC,*
    2021 U.S. Dist. LEXIS 122512 (S.D.N.Y. June 30, 2021) ....................................................... 13

*Sonterra Cap. Master Fund Ltd. v. Barclays Bank PLC,*
    2023 U.S. Dist. LEXIS 208734 (S.D.N.Y. Nov. 21, 2023) ...................................................... 11

*Tanski v. Avalonbay Cmtys,*
    2020 U.S. Dist. LEXIS 91635 (E.D.N.Y. May 26, 2020) ......................................................... 11

*Torres v. Gristede's Operating Corp.,*
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ...................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ....................................................................................................... 11

## Codes, Statutes, and Other Regulations

Fed. R. Civ. P. 23 .................................................................................................................... *passim*

N.J. Stat. Ann. §56:8-19 ...................................................................................................................... 7

New York General Business Law §349 ............................................................................................... 7

American Law Institute, *Principles of the Law of Aggregate Litig* (2010) ....................................... 5

## INTRODUCTION

Plaintiff Ana Martinez Reyes ("Plaintiff") on her own behalf and on behalf of the members of the settlement class (the "Class") certified by this Court in its order dated February 6, 2024 (ECF No. 31),[1] submits this memorandum in support of her unopposed motion, pursuant to Federal Rules of Civil Procedure 23(e), 23(h), and 54(d)(2), for the following relief:  (1) final approval of the Settlement as adequate, fair and reasonable; (2) an award of attorneys' fees of $600,000 and an award of costs and expenses of $7,546.07; (3) a service award to the Named Plaintiff in the amount of $9,000; and (4) approval of the fees and expenses of the Settlement Administrator, American Legal Claims Services, LLC, in the amount of $140,000.[2]  A proposed form of final approval order and judgment as was previously agreed-upon by the parties and a copy is attached hereto as Exhibit A.

### I.    Introduction

Plaintiff is pleased to move for final approval of the Settlement of this action.  On February 6, 2024, this Court granted Plaintiff's motion preliminarily approving settlement and directing notice to the Class and setting the date for the fairness hearing.  ECF No. 31 ("Preliminary

---

[1] The Settlement is on behalf of the following Settlement Class, which the Court certified for purposes of settlement, notice and distribution only:

> All persons who paid CityMD bills up to and including December 1, 2022 for a Covid test that was conducted at a CityMD facility located in either New York or New Jersey.

ECF No. 31 at 14.

[2] Unless otherwise noted, all references to the "Lesser Prelim. Decl." are to the Declaration of Seth R. Lesser in support of Plaintiff's motion for preliminarily approval (ECF No. 25-1), while references to the "Fiori Decl." are to the Declaration of Noah Fiori, attached as Exhibit 1 to the present Lesser Declaration ("Lesser Decl.").   Additionally, this memorandum uses the same defined terms as are used in the Settlement Agreement (ECF No. 21-1 at Ex. A) and that were used in the memorandum in support of preliminary approval (ECF No. 26).

Approval Order"). The 123,667 Class Members have been appropriately notified: not a single Class Member filed an objection to any part of the Settlement and there were only four opt-outs.[3] *See* Fiori Decl. ¶¶ 13 & Ex. C. The overall response from the Class is thus in support of approval (Lesser Decl. ¶ 5), which will provide a recovery of at least $5.00 directly paid to each Class Member, none of whom had to submit a claim form. There cannot be any fair dispute that the Settlement was not the result of a contested litigation and an arms-length mediation between skilled and competent counsel. In sum, the Settlement provides the settlement Class Members with relief warranting approval.

## II.    Procedural History & Background

The history of this litigation – including the claims at issue and the manner in which the Parties undertook, to avoid time and expense for all involved, an extended and comprehensive process of factual investigation and informal discovery, as well as colloquy about the claims and defenses in the case, and the mediation process before Mr. Roger Deitz, was previously summarized for the Court at pages 2-4 of the memorandum for preliminary approval, ECF No. 26, which is incorporated by reference to avoid repetition.

## III.    Summary of Settlement Terms, The Notice That Was Sent, And The Class's Reaction

### A.    Summary of the Settlement and Parties' Proposed Change to the Cy Pres Recipient

As here relevant, the primary terms set forth in the Settlement Agreement provide that the $1.8 million common fund settlement would provide: (1) the fees and costs of Notice of the Settlement and payment of the settlement amounts to the settlement Class members by a Claims

---

[3] The motion for preliminary approval stated, based upon information from Defendant, that the Class size was 138,776 as that represented the number of fields in Defendant's records, but American Legal Claim deduped that list to determine the actual class size to be 123,667 (Fiori Decl. at ¶ 3).

Administrator to be selected by Plaintiff's Counsel, subject to the approval of the Court, except that up to $50,000 of the cost of the mailing the payment of the settlements amounts by the Claims Administrator shall be paid by Defendant and any amount in excess of $50,000 shall be paid out of the Settlement Fund; (2) the payment of attorneys' fees to Plaintiff's counsel (not to exceed one-third of the Settlement Fund, subject to the Court's approval), (3) reimbursement of the expenses of Plaintiff's counsel, subject to the Court's approval; (4) payment of a Service Award to the named Plaintiff, not to exceed $9,000, and subject to the Court's approval; and (5) after subtracting (1), (2), (3) and (4) (the "Net Settlement Amount"), the direct payment (*i.e.*, that there is no requirement of submission of claims forms) to members of the settlement Class by Defendant of their shares of the Net Settlement Amount, to be determined on a pro rata basis, based on the total amounts paid by each Class Member to Defendant pursuant to the COVID billings at issue in this lawsuit. The Class Member payments will be made in pro rata proportion to the amounts of the refunded charges previously paid by Class Members by Summit except that, in a final settlement agreement, a minimum amount is expected to be determined for any amounts to go to any single Settlement Class member. The Settlement also provided that, in the event that there are uncashed checks or undelivered electronic payments following the distribution of the settlement checks, and no further update of addresses can be addressed by a Level 1 trace by the Claims Administrator or a resubmission of an electronic payment does not succeed, any remaining amounts would be sent to Summit Medical Group Foundation, Inc. d/b/a Summit Health Cares as a *cy pres* entity.

The Parties have agreed to a change with respect to the very last provision of the summary of the Settlement Agreement, the designation of the *cy pres* recipient. *See* Ex. 2 to Lesser Decl. (Addendum to Settlement Agreement). This is because, in the Preliminary Approval Order the Court noted how, in general, "courts have increasingly noted concern with a doctrine that invests courts and litigants with a highly discretionary ability to control the allocation of large sums of money

to the possible detriment of class members" (Preliminary Approval Order at 10 (case citations omitted)) and, as to the proposed *cy pres* recipient, Summit Health Cares, noted its apparent relationship to Defendant. Accordingly, the Court wrote that it "expect[ed] the Parties' motion for final approval of the Settlement to address this question in greater detail and explain why the use of the *cy pres* here is appropriate and why Summit Health Cares is an appropriate recipient of unclaimed funds." *Id.*

The reason why a *cy pres* recipient here is proper is because this is a settlement providing for individual distributions. The mechanism set forth in the Settlement Agreement for sending those distributions is certainly appropriate – sending direct payment, without any claim form requirement, by a means chosen by Class Member (either electronic transfer or check). Settlement Agreement (ECF No. 25-1 Ex. A § 5.2.2 (ECF page #16 of 55)). Necessarily, there will be some uncashed checks (most likely due to changes of address or loss in the mail) or electronic payments that do not complete, and, accordingly, the Settlement Agreement properly provides that addresses for checks be rechecked through a Level 1 skip trace and for resubmission of electronic payments. *Id.* Nonetheless, invariably there will still be some funds that cannot be paid to Class Members and the *cy pres* will deal with those amounts. Since, with over 100,000 individuals receiving payments, it will necessarily will not be practicable to make a redistribution because the cost of the distribution would vastly exceed any remaining funds, the appropriate mechanism is, indeed, a *cy pres* recipient. This accords with recognized best practices, as captured perhaps most succinctly by the often-cited National Association of Consumer Advocates *Standards and Guidelines For Litigating And Settling Consumer Class Actions (Fourth Edition)* (copy attached as Exhibit 3 to Lesser Decl.):

> If a settlement involves individual distribution to class members but funds remain after distribution, the settlement should provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically feasible or participating class members have been fully compensated. *Cy pres* allows the funds to be used to indirectly benefit the class, thereby providing a far preferable

4

> alternative to returning the funds to the defendant, which would undermine the deterrence function of class actions and the underlying substantive-law basis of the recovery by rewarding the alleged wrongdoer simply because distribution to the class would not be viable.

*Id.* at 23; *accord* American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.07 (2010) (also quoted in *id.*; *see also, e.g., In re Domestic Drywall Antitrust Litig.*, No. 13-2437, 2021 U.S. Dist. LEXIS 191660, at *2 (E.D. Pa. Oct. 5, 2021) (relying on the NACA *Standards and Guidelines* and the ALI *Principles* to evaluate proposed *cy pres* distribution in a class action settlement). That is precisely what has been followed here – redistribution would not be practical and rather than a reverter, and a proper *cy pres* recipient is preferred to the money reverting to Defendant.

As to the recipient, although Defendant Summit, at the mediation of this matter explained to the satisfaction of both the mediator, Mr. Roger Deitz, and Plaintiff that its proposed *cy pres* recipient would be a proper *cy pres* recipient, upon receiving the Court's Preliminary Approval Order, Plaintiff asked Summit to reconsider Summit Health Care, and Summit agreed. Accordingly, the Parties have now agreed that the *cy pres* recipient of any uncashed/ undelivered settlement funds should be Epidemics Fund of The Fund for Public Health NYC, a well-respected independent non-profit created in 2002 that partners with the New York City Health Department to connect the Health Department with private sector entities and non-profits to address health needs. Indeed, it has raised in the past two decades over a half a billion dollars of funding. *See* https://fphnyc.org/about/our-story/. Of particular applicability here, its primary present work and "priority" missions are "Fighting Epidemics," Mother/baby health projects, as well as mental health and substance abuse; and it has, as noted, an Epidemics Fund. See https://fphnyc.org; https://fphnyc.org/work/; *see also* https://fphnyc.org/work/fighting-epidemics/ (webpage specifically highlight work ensuring equitable distribution and uptake of Covid-19 vaccines as well as other epidemic-related undertakings, such as "widespread conditions or behaviors, such as opioid use."). Inasmuch as this litigation arises out of the COVD-19 epidemic and the charging of virus tests, its Epidemics Fund presents an excellent "fit" for

any *cy pres* remainder that could exist. *See Jones v. National Distillers*, 56 F. Supp. 2d 355, 358 (S.D.N.Y. 1999) (holding that "[a] frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members. Such a donation may serve the *cy pres* principle of indirectly benefitting all class members."); *see also, e.g., Plotz v. NYAT Maintenance Corp.*, 2006 U.S. Dist. LEXIS 4799 at 2 (S.D.N.Y. Feb. 6, 2006) (approving the distribution of unclaimed class settlement funds to several workers' rights organizations whose interests were aligned with those of the class members).

Accordingly, with this change in the proposed *cy pres* recipient Plaintiff (and Defendant, as well) respectfully hopes that the Court's concerns in this regard have been addressed.

### B. The Notice That Was Sent, And The Class's Reaction

Since preliminary approval and with the Parties' aid, (1) the required CAFA notice was effectuated by Defendant (*see* ECF Nos. 27 & 28), and (2) the Court-appointed Settlement Administrator, American Legal Claim, has provided the notice to the Class pursuant to the Court's Preliminary Approval Order (with a 99.54% delivery success rate), established the settlement website, and has fielded responses of the Class members.  Fiori Decl. ¶¶ 5, 15.  American Legal Claim will continue to perform these duties and those outlined in the Settlement Agreement going forward, in the event of approval, including continuing to handle inquiries from the Class Members, determining the proper payment to, and providing payment to, the Class Members.  Lesser Decl. ¶ 14.

The Class's reaction has been positive, with those Class members who reached out to Class Counsel expressing how pleased they are with the Settlement.  Lesser Decl. ¶ 5.  In terms of formal responses, as noted, there has not been a single objection to any part of the Settlement.

In sum, the overall response from the Class is overwhelmingly in support of approval of the Settlement Agreement, or, at the very least, certainly does not oppose it or provide any ground for not approving it.

## ARGUMENT

**IV.    The Settlement Should Be Approved Under Fed. R. Civ. P. 23(e)(2) And *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)**

As previously set forth by Plaintiff (*see* ECF No. 26 at 6, 10), this Settlement would, if finally approved by the Court, resolve the Class's consumer fraud claims that were asserted by Plaintiff under New York General Business Law §349 and the New Jersey Consumer Fraud Statute, N.J. Stat. Ann. §56:8-19 arising out of Defendant's alleged billing practices for Covid-19 tests.  Class Members have already been refunded by CityMD for the amounts that were charged and will receive at least $5.00 constituting the additional consumer protection law damages.  The final amounts will be determined *pro rata*, based on the amount each Class member was previously refunded.

Without repeating at length what was set forth in Plaintiff's Preliminary Approval memorandum as to the applicability of the required settlement evaluation standards under Fed. R. Civ. P. 23(e)(2), as well as under the Second Circuit's "*Grinnell*" factors (*see* ECF No. 26 at 7-15; *see also* Preliminary Approval Order at 4-5 (preliminary addressing the standards)), for this Settlement, litigated at arms'-length by adequate, experienced counsel well-versed in the law and facts of the case, and given the issues that could have prevented, or at a minimum delayed, any recovery – including risks attendant upon certifying a class and Defendant's substantial defenses that it did not violate any laws whatsoever given the uncertain regulatory regime that existed for COVID testing charges nor that it acted willfully, *see* Preliminary Approval Order at 7 ("Reyes faced significant litigation risks.") – the recovery amount of at least $5 per COVID test, to be paid directly to the Class without the need for a claim form, represents a fair, reasonable, and adequate result, particularly inasmuch as the Class members have been already repaid 100% of their actual potential damages.

Only the second *Grinnell* factor – the reaction of the class to the proposed settlement – could not be addressed or assessed at the preliminary approval stage. That factor also final approval. "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Here, the deadline for objecting to the Settlement and for requesting exclusion from the Settlement has passed. *See* ECF No. 31 (Preliminary Approval Order at 17-18). As noted above, no objections have been received, and only four opt-outs were received. Fiori Decl. at ¶¶12-13; Lesser Decl. ¶ 5.[4] This positive response strongly favors the Settlement's final judicial approval. *See, e.g., Grottano v. City of N.Y.,* 2021 U.S. Dist. LEXIS 227995, *17-18 (S.D.N.Y. Nov. 29, 2021) ("Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement.") (*quoting Tiro v. Pub. House Invs., LLC,* 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013)); *Escobar v. Pret A Manger (USA) Ltd.,* No. 17-cv-05227, 2019 U.S. Dist. LEXIS 234799 at *6 (S.D.N.Y. Feb. 19, 2019) (Broderick, J.) ("The Court specifically finds that the class' reaction to the settlement was positive" where there was only one objection, which did not relate to the claims at issue in the case, and "[o]nly 17 Class Members, representing less than .5% of the Class, timely opted out."); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 239-240 (E.D.N.Y. 2010) (with 127 opt outs and 24 objections in class of over 11 million, the court stated, "[g]iven the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval.").

---

[4] The four opts were: Alex Berzanskis, Josselin Aldana Ng, Nina Sarkisova, and Elmira Amirkhan Zozzaro. Copies of their opt-out communications are attached as Exhibit C to the Fiori Decl. These individuals are listed by name in the proposed final approval order filed herewith.

The Settlement therefore meets all the requirements for final approval in the Second Circuit and set forth in Fed. R. Civ. P. 23(e)(2).

## V.    The Settlement Class Should Be Finally Approved for Settlement Purposes

The Court preliminarily approved the Settlement Class for settlement purposes. Preliminary Approval Order.  Although the finally determined Class is slightly smaller than original thought (123,667 compared to 138,776, *see* note 3, above), that number is still numerous, and no other changes have occurred that would impact the propriety of the Class here for settlement purposes. Accordingly, it should be finally approved for final Settlement purposes.

## VI.    Class Counsels' Request for Attorneys' Fees, Costs, and for Service Payments to the Class Representatives are Reasonable and Should be Approved

### A.    The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in Class Action Settlements

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although Defendant does not oppose Plaintiffs' fee request, the Court must nonetheless assess the reasonableness of the award when considering whether the settlement is fair. *See, e.g., Ersler v. Toshiba Am., Inc.*, 2009 U.S. Dist. LEXIS 14374 (E.D.N.Y. Feb. 24, 2009).  Behind a class settlement fee request is the recognition that attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated from that settlement fund for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *Goldberger*, 209 F.3d

at 47; *see also Boeing*, 444 U.S. 472 at 478 ("The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.").

"Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *30-31 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit authorizes district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47. In expressly approving this method, the Second Circuit recognized that "the lodestar method proved vexing" and resulted in "an inevitable waste of judicial resources." *Id.* at 49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("the percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases."). The alternative method, the lodestar method, as the Second Circuit has stated, "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* (internal quotation and brackets omitted).

In common fund cases, therefore, the Second Circuit favors awarding fees according to the "percentage of the fund" method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417-422 (2d Cir. 2010). As was written nearly twenty years ago, and has remained true since, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of

litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (internal quotation omitted); *accord, e.g., Tanski v. Avalonbay Cmtys*, 2020 U.S. Dist. LEXIS 91635, *4-5 (E.D.N.Y. May 26, 2020). Here, Class Counsel request an attorney fee representing one-third of the $1.8 million benefit they have obtained for the Class. [5] Without expanding this discussion at length, Plaintiff agrees that, as the Court wrote in the Preliminary Approval Order, that a one-third fee request "appears reasonable." And it is certainly in line with Second Circuit and District Courts within this Circuit precedent where requests for 1/3 fees in class action settlements are routinely requested and granted. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness — particularly in cases with funds of less than $10 million." *In re N. Dynasty Mineral Ltd. Sec. Litig.*, 2023 U.S. Dist. LEXIS 149613, *23-24 (E.D.N.Y. Aug. 24, 2023) (citations omitted); *see also, e.g., McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010) (one-third is "consistent with the norms of class litigation in this circuit"); *accord also, e.g., Escobar, supra*, U.S. Dist. LEXIS 234799 at *10 (approving 33 1/3% fee); *Sonterra Cap. Master Fund Ltd. v. Barclays Bank PLC*, No. 15-cv-3538 (VSB), 2023 U.S. Dist. LEXIS 208734 *3 (S.D.N.Y. Nov. 21, 2023) (Broderick, *J.*) (same). Finally, in this regard, it is worth noting that the individual retainer for Ms. Reyes provided for a one third contingency (Lesser Decl. ¶ 10), so the fee request here is in line with the individual retainer of the named Plaintiff.

Lodestar fee awards, apart from difficulties in application, also fail to recognize risks assumed by attorneys with contingent fee agreements. *See, e.g., City of Burlington v. Dague*, 505

---

[5] Class Counsel also obtained a benefit of Defendant Summit paying up to $50,000 of the Settlement notice and administrative costs, which commonly comes from the common fund amount and this means that, in actuality, the request fee is less than 1/3rd of the benefit. In the Preliminary Approval Order, the Court stated, as noted below, that a one third fee request appeared reasonable but, presumably inadvertently, miscalculated it at 30%.

U.S. 557 (1992). In sum, the weight of authority advises that the Court should use the percentage-of-recovery method in determining a reasonable attorneys' fee here.

### B. Plaintiffs' Request for Attorneys' Fees is Reasonable

Class Counsel seek an award of attorneys' fees for $600,000, which represents one-third (33%) of the $1,800,000 common settlement fund amount obtained for the benefit of the Class. Lesser Decl. at ¶ 9-10. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement, and (6) public policy considerations. Each of these *Goldberger* factors weigh in favor of approving the requested award of attorneys' fees.

#### 1. Class Counsel Have Expended Significant Time and Labor

As set forth in the Lesser Declaration, Class Counsel have expended significant time and labor in litigating this case: jointly, Class Counsel, Klafter Lesser LLP and Locks Law Firm PLLC, have expended 389 hours of labor, for an aggregate lodestar of $284,262. Lesser Decl. at ¶¶ 11-13. All of this time was on contingency, with no guarantee of any repayment. *Id.* The hours were compiled from time records duly maintained by each attorney, paralegal, and support staff. Lesser Decl. at ¶ 12. The hours are reasonable, particularly in light of the efficient manner in which the litigation was undertaken, with a recognition that counsel on both sides were experienced and able and with the Parties' agreement to get to the heart of the claims without unnecessary motion practice, formal discovery or the like, and which permitted the parties to go to independent mediation in May 2023 just six months after the case was initially filed. *See* Lesser Decl. at ¶ 13. That the case proceeded thus efficiently and effectively and enabled the Parties to understand the parameters of the claims and be fully aware of the issues presented – and to have reached a

positive resolution for the Class expeditiously – is a positive result.  *See* Lesser Prelim. Decl. at ¶¶ 7-9 (addressing how the Parties agreed to exchange information, discovery, discuss matters in lieu of formal motion or discovery practice).  Yet, even doing so, the work consumed nearly 400 hours by Class Counsel.  *See also, e.g., Solis v. Orthonet LLC*, 19-cv-4678, 2021 U.S. Dist. LEXIS 122512 (S.D.N.Y. June 30, 2021) (Broderick, *J.*) (33.3% fee approved where, like here, agreement to mediate was reached upon the initial pleadings, followed by investigation of the claims, and preparation for mediation, and also where lodestar cross-check was 2.37).

Furthermore, as is typical that Class Counsel will also have to perform additional work to effectuate the settlement's administration.  *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").  Here, with a Class this large, there can be no doubt that Class Counsel expect there will be administrative and management demands in responding to Class Members, answering questions, and ensuring the smooth distribution of settlement funds.  Lesser Decl. at ¶ 14 (addressing how Class Counsel has been contacted by Class members already with questions about the Settlement and about their original rebate checks, which Class Counsel, together with Defendant's counsel are addressing).

## 2.  *The Magnitude and Complexity of the Litigation*

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996).  Here, while this case may not have been as complicated as some class actions that Class Counsel have handled, nor was it as simple as some statutory damage cases.  Obtaining class certification here, where there were arguably varying

13

representations and understandings of what was represented across a diverse consumer class and where, among other things, as the Court recognized, an "uncertain regulatory environment governing payments and reimbursements for COVID-related medical services" meant "demonstrating the state of mind necessary to obtain treble damages may have been challenging and the subject of extensive appeals." Preliminary Approval Order at 7-8. There were thus a number of substantial and non-uncomplicated issues of both fact and law so that the case could have presented, if proceeding forward through contested litigation, complicated issues that could have been long and expensive to address. *See also* ECF No. 26 at (10-11) (addressing litigation risks faced by Plaintiffs).

### 3. The Risk of Litigation

As immediately set forth, and thus as was addressed in the preliminary approval papers, there is no doubt that litigation risk existed here. In fact, as noted above, the Court itself stated in the Preliminary Approval Order (at 7): "Reyes faced significant litigation risks." This factor is also met.

### 4. Class Members are Represented by Experienced Class Counsel

Class Counsel's extensive experience was addressed in the preliminary approval papers (ECF No. 26 at 17 & Lesser Prelim. Decl. ¶17 and the Court's Preliminary Approval Order found as much. Preliminary Approval Order at 7 ("The Parties were represented by experienced counsel...."), 8 ("The distribution plan here has been formulated by experienced counsel...."), 9 (the payment procedures, "formulated by experienced counsel"), and 13-14 ("[Reyes] attorneys have sufficient skill and experience to competently represent the Class and have achieved a sound result."). This factor is therefore met.

### 5.  *The Requested Fee Is Reasonable In Relation To The Settlement*

As this Court has written, "Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall" and that "[t]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Solis*, 2021 U.S. Dist. LEXIS 122512, at *8 (citing multiple cases and quotation omitted). Further, "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." *Id.* And, certainly, with a $1.8 million settlement, a one third fee is certainly the norm and "[c]ourts in this district have routinely approved requests for one-third of the settlement fund in cases with settlement funds that are the same or larger than this fund." *Id.* (statement made in context of $3 million settlement) *(citing Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding counsel 33% of $3,265,000 settlement fund); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (collecting cases with funds in excess $6 million); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (awarding counsel 33% of $4,900,000 settlement fund because "the requested amount [was] consistent with the norms of class litigation in this circuit") (internal quotation marks omitted)). Accordingly, this factor is met.

### 6.  *Public Policy Considerations Favor the Fee Requested*

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. In rendering attorneys' fee awards, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y 1999). What was at issue in this case was, a situation when, faced with a

major health emergency, Plaintiff contends that it was generally believed that Covid tests were not to be charged, yet Defendant Summit did precisely that at the CityMD clinics.  Summit has asserted that this was the result of a confused regulatory structure and that it violated no laws – let alone willfully. However, the named Plaintiff believed, and alleged, that the Defendant was taking economic advantage of a health crisis when it started, after a long delay to bill for those tests.  Shortly before this litigation was filed, Summit agreed to refund all the monies it had received but which left the issue of whether Defendant's practice had nonetheless violated New York and New Jersey's consumer protection laws which contain statutory sanctions to deter consumer fraud and deceptive practices. Although Summit strongly denied that it violated these laws, Class Counsel respectfully submit that courts should encourage meritorious private lawsuits such as this one given the totality of the circumstances. *See Hesse v Godiva Chocolatier*, 2022 US Dist. LEXIS 72641, at *40 (S.D.N.Y. Apr. 20, 2022) ("the Second Circuit 'take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'"). Had Class Counsel not taken on the risk of prosecuting this case, and had they not been equipped with the skill and resources necessary to pursue the claims vigorously, the Class would have recovered the refunds that the Class members have received, and nothing more.

> C.  The Lodestar Cross Check Further Supports an Award to Class Counsel of
>       One-Third of the Settlement Fund

The trend in the Second Circuit has been to apply the percentage method, and then loosely use the lodestar method as a baseline or "cross check" of the reasonableness of the requested fee. *Goldberger,* 209 F.3d at 50; *see also Rosenfeld v. Lenich*, 2021 U.S. Dist. LEXIS 26950, *7-8 (E.D.N.Y. Feb. 4, 2021) ("As a cross-check on reasonableness, courts often compare the proportionate fee amount to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate). As part of the cross check, the lodestar is

determined by multiplying the number of hours reasonably expended on a client's case by a

reasonable hourly billing rate for such services.

Here, Class Counsel's two firms together billed hours 389.63, to date, prosecuting the case.

Lesser Decl. ¶ 11.  At their usual and customary rates, as are charged to hourly-paying clients, and

applying current rates,[6] these hours translate into $284,262.00 in total lodestar.  *Id.*  As such, Class

Counsel's request for $600,000 in attorneys' fees represents a negative lodestar multiplier of 2.11 of

the total lodestar amount.  *Id.*  In light of the fact that courts in this Circuit "regularly award lodestar

multipliers from two to six times lodestar," Class Counsel's request is eminently reasonable.  *See*

*Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. LEXIS 170192, *16 (E.D.N.Y. Sept. 28,

2018) (*quoting Johnson v Brennan*, 2011 U.S. Dist. LEXIS 105775, *58 (S.D.N.Y. Sept. 16, 2011)

(*citing In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,

2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within

the Second Circuit"); *see also, e.g., Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM,

2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24,

2014) ("Lodestar multipliers of nearly 5 have been deemed 'common; by courts in this District.")

(citation omitted)); *Pinzon v. Jony Food Corp.*, 2018 U.S. Dist. LEXIS 87424, at *3 (approving

multiplier of 5.23); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371

(S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); *In re*

---

[6] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 U.S. Dist. LEXIS 177175, at *39 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008)* n.10 (similar). Yet, even had historical rates been used the multiplier would not materially change because this case has only covered three calendar years and billing rate increases across those three years for the two firms have not been substantial.

*NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97)). Indeed, in one of its leading and seminal class action decisions, *Wal-Mart*, *supra*, the Court of Appeals deemed a 3.5 multiplier reasonable and cited cases involving multipliers between 1.35 and 4.5. *Wal-Mart*, 396. F.3d at 123; *see also, e.g., Solis*, 2021 U.S. Dist. LEXIS 122512 (approving fee request of one third where lodestar cross-check was 2.37 in a case that had followed, as noted above, a similar procedural path to resolution). The lodestar cross-check of a 2.11 multiplier supports the requested fee award.

       **D.**  <u>The Court Should Approve Payment of Costs and the Settlement Expenses</u>

       Class Counsel also seeks reimbursement for litigation expenses of $7,546.07, and payment of the notice and claims administration costs to the Settlement Administrator, American Legal Claim Services, in an amount not to exceed $140,000. Lesser Decl. at ¶ 17; Fiori Decl. at ¶ 16. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted). As stated in the Lesser Declaration (at ¶¶ 15-16), Class Counsel's expenses are monies they invested at their own expense to meet the considerable costs of this litigation, and the total reported is less than the total expenses that Class Counsel will actually incur through and after the Final Approval hearing, as there are usually costs incurred in helping class and members post-settlement. The costs were quite reasonable and incurred in the prosecution of this matter. The largest charge was for the mediation ($5,000) and, after that, court fees and legal research. *Id.* These expenses were all incurred for the benefit of the Class members, and under well-established precedent, Class Counsel may be reimbursed for them. *See, e.g., Cohan*, 2018 U.S. Dist. LEXIS at *17-18; *Marshall v. Deutsche Post DHL*, 2015 U.S Dist. LEXIS 125869, *18-19 (E.D.N.Y. Sept. 21,

2015); *Chambery v. Tuxedo Junction Inc.*, 2014 U.S. Dist. LEXIS 101939, at *26-27 (W.D.N.Y. July 25, 2014).

As to its costs and expenses, American Legal Claim has provided notice as directed by the Court. It has incurred notice administration costs of approximately $$78,534 to date and expects additional costs for distribution to be $109,154.00 (Fiori Decl. ¶ 16), and because, as noted, $50,000 of the total costs for American Legal Claim will be paid directly to it by Defendant, the additional amount reasonably likely to be required for American Legal Claim's services will be $137,688, which Plaintiff has rounded to $140,000.  Based on Class Counsel's experience, the amount being charged by American Legal Claim to handle this notice and administration is reasonable.  Lesser Decl. at ¶ 17.

### E.  Service Awards to the Class Representatives Should be Approved

In the Preliminary Approval Order (at 10-11), the Court noted that while the proposed service award of $9,000 to named Plaintiff and settlement Class Representative Ana Martinez Reyes was "within the range of service awards regularly approved by courts in this District given counsel's representation regarding her contributions to this case," a point which, having been previously made, will not be reiterated here, in the recent *Moses v. New York Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023), decision, the Court of Appeals directed district courts evaluating the substantive fairness of settlements to "ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members," and accordingly instructed the final approval motion "to address the impact of *Moses*, if any, on the service award proposed for Reyes and the implications of that award for equitable treatment across class members."

Plaintiff respectfully submits that the service award requested is indeed reasonable.[7]  In the first instance, it amounts to less than one half of one percent of the total recovery, a *de minimus* percentage and an indicia to which courts have traditionally often looked to determine if a service award is equitable vis-à-vis a settlement for a class.  *See, e.g., Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530, at *48 (S.D.N.Y. Sep. 30, 2015) (finding service awards representing approximately 0.52% of the settlement fund within the range commonly approved in this district and collecting cases where service awards totaled between 1.7% and 9.1% of the settlement); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 U.S. Dist. LEXIS 12762, at *6 (S.D.N.Y. Feb. 9, 2010) (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards").  Further, and the service award would be substantially more than any other Class member (which would be true with many consumer class settlements), given the size of the Class here, it correlates to approximately 7 cents per Class member, also a *de minimus* amount, and less than 1.5% of the average expected recovery of $5 per Covid test.  Since the purpose of service awards is both to provide some measure of compensation for the work spent by the named Plaintiff (which Ms. Reyes has done in aiding counsel every step through this case (Lesser Decl. ¶ 19), and which the

---

[7] In fact, it is at the lower range of what Class Counsel sometimes seeks for their clients, and is approximately what the undersigned might have sought for a client twenty five years ago.  The range of awards is wide and often far higher than $9,000.  *See, e.g., Hart v. BHH, LLC*, 2020 U.S. Dist. LEXIS 173634, at *13 (S.D.N.Y. Sep. 22, 2020) ("[Service] [a]wards on an individualized basis have generally ranged from $2,500 to $85,000."); *Butt v. Megabus Ne. LLC*, 2012 U.S. Dist. LEXIS 137683, at *24 (S.D.N.Y. Sep. 25, 2012) (finding reasonable a service award of $15,000 to named plaintiff); *Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144, at *22 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *30 (S.D.N.Y. May 11, 2010) (granting service awards of $10,000.00 to each of 7 named plaintiffs); *Knox v. John Varvatos Enters.*, 520 F. Supp. 3d 331, 350 (S.D.N.Y. 2021) (granting service award of $20,000 to named plaintiff and collecting cases awarding between $1,500 and $30,000 to named plaintiffs.)

Court has acknowledged, Preliminary Approval Order at 11), but also to encourage individuals to be willing to step forward to file a lawsuit that may aid others, particularly where the individual alleged wrongs may be small, and by doing so could have repercussions that could harm the individual (such as by appearing on credit reporting agencies lists as a plaintiff, which could impact, for example, the ability to get an apartment), certainly it is not inequitable that Ms. Reyes, without whom this lawsuit would never have come to be and who did step forward and file a lawsuit in federal court to receive an award in a typical and not unreasonable amount for doing so.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the Final Approval Order, submitted herewith.

Dated:  April 23, 2024                                    Respectfully submitted,

By: Seth R. Lesser
Jeffrey A. Klafter
Seth R. Lesser
Jessica Rado
**KLAFTER LESSER LLP**
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Fax: (914) 934-9220
E: jak@klafterlesser.com
seth@klafterlesser.com

Janet Walsh
Francesca Iacovangelo

---

[8] As one court succinctly captured the point: "[t]he position as fiduciary for the class is less an honor than a headache. The representative plaintiff is identified as a class litigant in public records (potentially affecting credit reports and disclosures for financing), is subject to fiduciary duties to the class, may be deposed and required to produce records, and must meet with counsel and appear in court, for example." *Altamonte Springs Imaging, L.C. v State Farm Mut. Auto. Ins. Co.,* 12 So 3d 850, 857 (Fla. 3rd DCA 2009). *See also, e.g., Rodriguez v W. Publ'g Corp.,* 563 F3d 948, 958-959 (9th Cir 2009) (holding that "[service awards] are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.")

LOCKS LAW FIRM PLLC
622 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 838-3333
jwalsh@lockslaw.com
fiacovangelo@lockslaw.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 23, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sends notification of such filing to all counsel of record.

/s/ *Seth R. Lesser*
Seth R. Lesser
